In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1727

SCOTT E. SCHMIDT,

*Petitioner-Appellant*,

*v.*

BRIAN FOSTER, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-CV-01150-CNC — **Charles N. Clevert, Jr.**, *Judge*.

ARGUED SEPTEMBER 6, 2018 — DECIDED DECEMBER 20, 2018

Before WOOD, *Chief Judge*, and FLAUM, EASTERBROOK, KANNE, ROVNER, SYKES, HAMILTON, BARRETT, SCUDDER, and ST. EVE, *Circuit Judges*.[*]

ST. EVE, *Circuit Judge*. Scott Schmidt shot and killed his estranged wife. He confessed at the scene, but come trial he sought to mitigate his crime with the second-degree defense

---

[*] Circuit Judge Brennan did not participate in the consideration or decision of this case.

of adequate provocation. The Wisconsin trial court, in deciding whether the defense should go to the jury, asked for an offer of proof and an evidentiary hearing. Schmidt complied with the first request but balked at the second, not wanting to show any more of his defense hand. That concern was well taken, and the trial court ordered an *ex parte*, *in camera* examination of Schmidt instead. The trial court added, however, that Schmidt's lawyer could "not say[ ] anything" and would "just be present" for the examination.

The trial court questioned Schmidt in chambers. Schmidt's lawyer observed silently. Schmidt rambled, interrupted only by a few open-ended questions from the trial court and a brief break during which he reviewed his offer of proof with his lawyer. After the examination, the trial court ruled that Schmidt did not act with adequate provocation. He therefore could not raise the defense at trial. A jury later convicted Schmidt of first-degree homicide, and he was sentenced to life in prison.

Schmidt petitioned for a writ of habeas corpus, arguing that the trial court's *in camera* examination deprived him of counsel and due process. The district court denied Schmidt's petition, and a divided panel of our court reversed and remanded with instructions to grant it. We vacated that decision, reheard the case en banc, and now affirm the district court's judgment. The state trial court's unusual examination of Schmidt was constitutionally dubious, and we discourage the measure. But our habeas review is limited. We ask whether the state court of appeals unreasonably applied clearly established Supreme Court precedent in rejecting Schmidt's constitutional claims. We answer that it did not.

## I. Background

During an argument on April 17, 2009, Schmidt followed his estranged wife, Kelly Wing-Schmidt, out of her home and onto her driveway. There, he shot her seven times with his revolver. Police arrived and found Schmidt standing over the body with the gun in his hand. He confessed immediately.[1]

### A. Pretrial Proceedings

Wisconsin charged Schmidt with first-degree intentional homicide. He never recanted his confession, but he did intend to present an affirmative defense—adequate provocation. *See* Wis. Stat. § 940.01(2)(a). Under Wisconsin law, that defense mitigates intentional homicide from first degree to second. *Id.* § 939.44(2). The defense has "both subjective and objective components"—a defendant "must actually believe the provocation occurred" and the provocation must be one "that would cause an ordinary, reasonable person to lack self-control completely." *State v. Schmidt*, 824 N.W.2d 839, 842 (Wis. Ct. App. 2012) (citing Wis. Stat. § 939.44(1); *State v. Felton*, 329 N.W.2d 161, 172 (Wis. 1983)). "Once a defendant successfully places" adequate provocation "in issue," the state must disprove it beyond a reasonable doubt. *Id.* at 843 (citing *State v. Head*, 648 N.W.2d 413 (Wis. 2002)). To place the defense "in issue," a defendant need only present "'some'

---

[1] The material facts of this case are undisputed, and this background draws directly from the state courts' findings and the trial record. *See State v. Schmidt*, 824 N.W.2d 839 (Wis. Ct. App. 2012); *State v. Schmidt*, No. 09 CF 275, slip op. (Wis. Cir. Ct. July 27, 2011). Schmidt has not attempted to rebut any of the state courts' findings, and so we presume that they are correct. 28 U.S.C. § 2254(e)(1); *see also Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017).

evidence supporting the defense." *Id.* (quoting *Head*, 648 N.W.2d at 439).

Before trial, Schmidt filed a motion notifying the trial court and the state that he intended to present the adequate-provocation defense. He intended, specifically, to introduce evidence of Wing-Schmidt's "false allegations, controlling behaviors, threats, isolation, unfaithfulness, verbal abuse and arguments." The state argued that evidence of the couple's history, however fraught, did not support a theory of adequate provocation under Wisconsin law.

The trial court held a pretrial hearing in early 2010. At the hearing, the court echoed the state's concern that Schmidt's proposed provocation evidence, most of which related to events years before the murder, was irrelevant and would unfairly prejudice the state's case. The trial court therefore ordered an evidentiary hearing to determine whether Schmidt could meet his threshold burden. It instructed Schmidt that during the hearing his counsel could call witnesses, and, if the court was unsatisfied with the evidence presented, Schmidt could supplement the record. Before the hearing, Schmidt had to file a list of witnesses he intended to call.

Schmidt did so. His counsel filed a list of 29 witnesses with short summaries of their anticipated testimony, a legal analysis of the defense's applicability, and a five-page offer of proof with a six-year timeline of the couple's troubled history. A few days later, at another hearing, the trial court noted that it had reviewed Schmidt's submissions, but its reservations persisted. The trial court did not, however, ask for the presentation of witnesses or evidence from Schmidt, as it had said it would the month before. Instead, the court explained that its review of Wisconsin law—namely, *State v. McClaren*, 767

N.W.2d 550 (Wis. 2009)—confirmed that a hearing was appropriate, but that it should hold the hearing *in camera* to protect the defense from disclosing its trial strategy to the state (a measure *McClaren* blessed, 767 N.W.2d at 559 n.12). Schmidt's lawyer responded that additional evidence was unnecessary, but he agreed that if the court was going to question Schmidt it should do so *in camera* and *ex parte*. Schmidt's lawyer, in fact, noted that he intended to suggest that, if the court "ask[ed] for evidence from the defendant that goes to his subjective belief for adequate provocation," it should do so through an "ex parte in-camera inspection of the Court and the defendant and seal those records." The state agreed this was the "best way" to handle the court's examination.

The trial court then asked the state whether it would object to Schmidt's lawyer silently observing the examination. The state did not object—nor, for that matter, did Schmidt's lawyer. The state noted, though, that it did not want Schmidt conferring with counsel about how to answer the court's questions. Before concluding the in-court hearing and beginning the *in camera* examination, the court offered Schmidt's lawyer "a few minutes" to consult with his client. Schmidt's lawyer accepted.

The *in camera* examination opened with the trial court putting on the record that Schmidt's lawyer was "present but … not participating in the hearing." The court then asked Schmidt "what was in your mind" when he confronted Wing-Schmidt. Schmidt's answer, which went on uninterrupted for 14 transcript pages, addressed the events leading up to the killing, some history between him and his estranged wife, the moment of the killing (though he professed not to remember pulling the trigger), and the immediate aftermath. The trial

court stopped Schmidt as he was describing his arrest. It explained to Schmidt that his "attorney has made an offer of proof about other things that had occurred prior to this that had entered into your mind at the time." The trial court asked Schmidt to "tell us how those things entered into your mind at the time?" Schmidt explained that his estranged wife had threatened to take the kids and physically abused him. The trial court asked again; Schmidt continued to detail the couple's troubled history.

The trial court explained that Schmidt's testimony did not align with his offer of proof, to which Schmidt replied that he had not even seen the offer. The trial court then suggested a "short break," during which Schmidt could review the offer of proof while the court took a phone call. Schmidt's lawyer asked if he could consult with his client. The trial court responded, "It's off the record. Yeah, you can talk. But he should just be reviewing" the offer of proof.

Back on the record, the trial court noted that they had taken a break so that Schmidt could "review this offer of proof and different facts contained in it." Then, and again, the trial court asked Schmidt about "what you contemplated at the time" of the killing. Schmidt responded that everything had come "to a head," he was "overwhelmed, and eventually just got—they piled up one after another." Schmidt elaborated upon events that happened in years past—financial struggles, abusive behavior, and fights. The trial court concluded the examination, asked Schmidt and his lawyer to return to the courtroom, and said that it would consider its decision. Schmidt's lawyer did not ask to supplement his evidentiary presentation with affidavits or additional testimony.

That afternoon, and without further argument, the trial court ruled. It did not detail factual findings, citing the *ex parte* and *in camera* nature of the examination. Its conclusion was that the killing "did not involve a provocation and it was not an adequate provocation."

A month later, at another pretrial hearing, the parties discussed whether Schmidt would call one of the witnesses identified in his annotated witness list. The trial court stated that since it had ruled on the defense's admissibility, it did not see the relevance of the testimony. Schmidt's lawyer explained that he thought the "issue open" and believed that the court would allow further supplementation. The trial court rejected that idea, noting again that it had already ruled on the defense's admissibility. The court would, though, allow Schmidt to "supplement the record for appeal." Schmidt's lawyer did not do so.

## B. Trial and Posttrial Proceedings

Trial began on March 4, 2010, and lasted five days. The jury convicted Schmidt of first-degree homicide.

Schmidt moved for a new trial on two grounds: the denial of his due process right to present a defense and the denial of his Sixth Amendment right to counsel during the *in camera* examination. The trial court held oral argument. During oral argument, the trial court asserted that the examination was simply "an effort to supplement the writing" which the court "relied upon and made reference to" during the examination. At the end of oral argument, the court denied Schmidt's motion and issued its opinion. The opinion explained:

> [D]efense counsel suggested and agreed to an in-camera hearing, and did not at any point request to actively

participate in the in-camera examination. In addition, there was a break during the in-camera hearing to allow defense counsel and defendant to confer regarding the offer of proof. Thus, defense counsel actively participated prior to and during the in-camera proceeding. As the State notes, this is not a circumstance where the issues and argument were undertaken by the defendant without representation of counsel. The nature and detail of the written offer of proof clearly indicates that counsel discussed the numerous points with the defendant.

The opinion repeated that the defense "expressed a preference for, and agreed to, an in-camera proceeding for the defendant's oral offer of proof" and that "[a]t no time did counsel make a request to question the defendant." It concluded, in "view of defense counsel's extensive argument and submissions with regard to the adequate provocation defense, the Court finds there was no denial of the right to counsel."

The trial court sentenced Schmidt to the mandatory penalty for first-degree homicide—life in prison. *See* Wis. Stat. §§ 940.01, 939.50(3)(a), 973.014(1g).

## C. The Court of Appeals Decision

Schmidt appealed. The Court of Appeals of Wisconsin explained first that Schmidt's case presented a "close question" as to whether he put forth "some evidence" of adequate provocation. *Schmidt*, 824 N.W.2d at 850. It noted that the state had conceded that "Schmidt, subjectively, acted in the heat of passion when he shot Wing-Schmidt." *Id.* at 850 n.8; *see also id.* at 844 n.5. But the state court of appeals, citing mostly Schmidt's "rambling narrative" during the *in camera* examination, held that Schmidt had failed to present some evidence of objectively adequate provocation. *Id.* at 847, 850–52. It cited also the

lengthy history of hostility between Schmidt and his estranged wife. Considering this history and the fact that Schmidt had a hand in starting the fight that culminated in the killing, the court decided that Schmidt "deliberately chose to ignite the fire." *Id.* at 852.

The court of appeals also rejected Schmidt's right-to-counsel claim. The *in camera* examination was, according to the court, "merely a supplementary proceeding conducted for his benefit." *Id.* Especially in light of *McClaren*, the court said, the examination in "a nonadversarial atmosphere was a reasonable accommodation." *Id.* at 852–53. Regarding Schmidt's argument that the examination was a "critical stage," the court of appeals saw it as "[f]atal" that the examination was "not the only opportunity for Schmidt to present his provocation evidence to the court." *Id.* at 853. The court added that, in any event, the trial court "recessed to allow Schmidt to review his attorney's written offer of proof and speak with his attorney." *Id.* The court of appeals concluded that "if counsel felt Schmidt or the court was overlooking something, or had any other concerns, there was an opportunity to so advise Schmidt." *Id.* Plus, according to the court, "Schmidt had the opportunity to present any concerns or questions he had to his attorney." *Id.*

## D.  Federal-Court Proceedings

Schmidt turned to federal court, petitioning for a writ of habeas corpus. The district court denied Schmidt's petition. It concluded that the state courts had not deprived Schmidt of his due process right to present a defense. It concluded further that the state courts had not unreasonably applied clearly established Supreme Court law in rejecting Schmidt's right-to-counsel claim. *See* 28 U.S.C. § 2254(d)(1). On both claims,

however, the district court granted a certificate of appealability. *See id.* § 2253(c).

A divided panel of our court reversed and remanded. *Schmidt v. Foster*, 891 F.3d 302 (7th Cir. 2018). The majority reasoned that Schmidt had a clearly established right to counsel at critical stages, and, in this case, there was no more important stage for Schmidt—whose sole defense hinged on the ruling that immediately followed—than the *ex parte*, *in camera* examination. The majority did not reach Schmidt's due process claim. The warden petitioned for a rehearing en banc. A majority of active judges voted to grant the petition, and we vacated our initial opinion. *Schmidt v. Foster*, 732 F. App'x 470 (7th Cir. 2018).

## II. Discussion

We review the district court's decision de novo, but our inquiry is an otherwise narrow one. *Freeman v. Pierce*, 878 F.3d 580, 585 (7th Cir. 2017). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief after a state-court adjudication on the merits only when that decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2). We focus here on the state court of appeals opinion, as the last reasoned state-court decision on the merits. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The question, all agree, is whether that opinion unreasonably applied clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

The bounds of a reasonable application depend on "the nature of the relevant rule." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* The Supreme Court has emphasized that only its holdings define the constitutional rule invoked. *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *see also Carey v. Musladin*, 549 U.S. 70, 75–77 (2006). If a rule entails an "inevitable" application to a set of facts, courts must apply it to those facts. *Long v. Pfister*, 874 F.3d 544, 549 (7th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 1593 (2018); *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). But AEDPA "does not require state courts to extend" precedent nor does it "license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted). Time and again, the Court has cautioned against stretching its precedent to declare state-court decisions unreasonable. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558–60 (2018) (per curiam); *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728–29 (2017) (per curiam); *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); *Woods v. Donald*, 135 S. Ct. 1372, 1376–77 (2015) (per curiam); *Lopez v. Smith*, 135 S. Ct. 1, 3–4 (2014) (per curiam); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam).

A state-court decision can be a reasonable application of Supreme Court precedent even if, in our judgment, it is an incorrect application. *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017), *cert. denied sub nom. McDaniel v. Foster*, 138 S. Ct. 554 (2017); *Winston v. Boatwright*, 649 F.3d 618, 632 (7th Cir. 2011). A state-court decision can be a reasonable application even if the result is clearly erroneous. *Woodall*, 572 U.S. at 419. And a state-court decision can withstand habeas review even when the petitioner presents "a strong case for relief."

*Harrington*, 562 U.S. at 102. Only when a state-court decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" does it constitute an unreasonable application of clearly established law. *Id.* at 103; *Woodall*, 572 U.S. at 420. This standard is as Congress intended: "difficult to meet." *Harrington*, 562 U.S. at 102; *Sexton*, 138 S. Ct. at 2558. As we have said, solely in "those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making about federal constitutional claims" is habeas relief appropriate. *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc), *cert. denied*, 138 S. Ct. 2677 (2018).

This is not one of those uncommon cases. In our narrow habeas review, we need not, and do not, endorse the constitutionality of the trial court's unusual *ex parte, in camera* examination without counsel's active participation. *See, e.g., Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam). It is enough to say that the Supreme Court has "never addressed" a case like this one—factually or legally—and so we cannot brand the state-court decision unreasonable. *Carey*, 549 U.S. at 76.

## A. Right-to-Counsel Claim

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right means more than a lawyer at trial. *See Powell v. Alabama*, 287 U.S. 45, 60–66 (1932). It ensures that defendants facing incarceration will have counsel at "all critical stages of the

criminal process." *Marshall*, 569 U.S. at 62 (citation omitted); *see also, e.g., Lee v. United States*, 137 S. Ct. 1958, 1964 (2017).

Schmidt's claim is not about the effectiveness of his lawyer, a claim which would require him to show prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). He argues, instead, that his lawyer's court-ordered silence during the examination completely deprived him of counsel at a critical stage, such that prejudice is therefore presumed. This type of claim has its roots in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, decided the same day as *Strickland*, the Supreme Court synthesized its right-to-counsel jurisprudence to date and, in doing so, described the "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658; *see also, e.g., Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (describing *Cronic*'s "three situations"); *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (same).

Schmidt invokes *Cronic*'s first and "[m]ost obvious" circumstance—"the complete denial of counsel."[2] *Cronic*, 466 U.S. at 659. Such a denial need not last the entire proceeding, but it must occur during a critical stage. *Id. Cronic* explained that the Court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage." *Id.* at 659 n.25. That explanation referred to cases in which counsel had not been appointed to represent

---

[2] *Cronic*'s other two scenarios concern (1) instances in which counsel fails entirely to subject the prosecution to meaningful adversarial testing and (2) circumstances in which even a fully competent lawyer likely could not provide effective assistance. *Cronic*, 466 U.S. at 658–60. Schmidt's claim does not fit into either scenario, and he does not contend otherwise.

the accused at the time of a critical stage in the proceeding, *White v. Maryland*, 373 U.S. 59 (1963) (per curiam) (no counsel present at entry of plea); *Hamilton v. Alabama*, 368 U.S. 52 (1961) (no counsel present at arraignment), or cases in which a court order or state law barred counsel from assisting during a critical stage of the trial, *Geders v. United States*, 425 U.S. 80 (1976) (bar on consultation during overnight recess); *Herring v. New York*, 422 U.S. 853 (1975) (bar on summation); *Brooks v. Tennessee*, 406 U.S. 605 (1972) (law requiring defendant to testify first at trial or not at all); *Ferguson v. Georgia*, 365 U.S. 570 (1961) (bar on eliciting client's trial testimony). At all rates, *Cronic* and later decisions emphasize that the denial must be "complete" to warrant the presumption of prejudice. *Cronic*, 466 U.S. at 659; *Wright v. Van Patten*, 552 U.S. 120, 125 (2008); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *see also Penson v. Ohio*, 488 U.S. 75, 88 (1988).

*Cronic* and its kin are clearly established law, but they come with two caveats. First, the presumption of prejudice is "narrow." *E.g.*, *Florida v. Nixon*, 543 U.S. 175, 190 (2004); *Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014). It arises only when the denial of counsel is extreme enough to render the prosecution presumptively unreliable. *Flores-Ortega*, 528 U.S. at 484; *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002). That happens rarely: only once in the thirty-plus years since *Cronic* has the Court applied the presumption of prejudice it described in a critical-stage case. *See Penson*, 488 U.S. at 88 (presuming prejudice where the defendant lacked counsel for appeal). Second, the Court has outlined the principles behind the *Cronic*-described rights in only general terms. As a result, the "precise contours" of these rights "remain unclear." *Donald*, 135 S. Ct. at 1377 (quoting *Woodall*, 572 U.S. at 424); *see also Van Patten*, 552 U.S. at 125. State courts therefore "enjoy

'broad discretion' in their adjudication" of them.[3] *Donald*, 135 S. Ct. at 1377 (quoting *Woodall*, 572 U.S. at 424); *accord Yarborough*, 541 U.S. at 664. Mindful of those principles, we turn to the reasonableness of the state-court decision denying Schmidt's claim that (1) at a critical stage (2) he was completely denied counsel.

### 1. Critical Stage

The Supreme Court has not provided a concise explanation of what constitutes a critical stage. *Van v. Jones*, 475 F.3d 292, 312 (6th Cir. 2007). Broadly, it has described a critical stage as a "step of a criminal proceeding" that holds "significant consequences for the accused." *Bell*, 535 U.S. at 696 (citations omitted). Alternatively, though still broadly, the Court has said that whether a stage is critical depends on whether, during a "particular confrontation," the accused faces prejudice that counsel could "help avoid." *United States v. Wade*, 388 U.S. 218, 227 (1967); *see also Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008) (stating "what makes a stage critical is what shows the need for counsel's presence"); *United States v. Ash*, 413 U.S. 300, 313 (1973) (describing a critical stage as a moment in which the accused requires "aid in coping with legal problems or assistance in meeting his adversary").

However described, the Supreme Court has recognized a range of pretrial, trial, and posttrial events to count as critical stages. *See, e.g.*, *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (postindictment interrogation); *Iowa v. Tovar*, 541 U.S. 77, 87

---

[3] We avoid calling these claims "*Cronic* claims," as some have. *Cronic* itself was not a case "in which the surrounding circumstance make it unlikely that the defendant could have received the effective assistance of counsel." 466 U.S. at 666. *Cronic* explained the rare types of cases in which courts presume prejudice, but it did not exemplify any of them.

(2004) (plea hearing); *Penson*, 488 U.S. at 88 (appeal); *Estelle v. Smith*, 451 U.S 454, 470–71 (1981) (court-ordered psychiatric evaluation); *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970) (plurality) (preliminary hearing); *Wade*, 388 U.S. at 236–37 (postindictment lineup); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (sentencing); *White*, 373 U.S. at 59–60 (plea entry); *Hamilton*, 368 U.S. at 53 (arraignment). Yet the Court has not confronted the circumstance that this case presents: a deprivation of counsel during an *in camera* examination, which was conducted as a part of a broader, pretrial evidentiary presentation. Its decisions, therefore, do not bind us on how to assess the relevant stage, whether as the *in camera* examination alone or as the entire evidentiary presentation.

That gap in the law shows itself here. In his papers, Schmidt contended that the *in camera* examination was itself the relevant critical stage. At oral argument, his counsel seemed to take a different approach. She submitted that the critical stage was the "entire proceeding" regarding the sufficiency of Schmidt's provocation evidence, "one portion" of which was the *in camera* examination. Under this view, the critical stage comprised in-court hearings, briefing, an offer-of-proof submission, oral arguments, and, of course, the *in camera* examination. The dissent, for its part, submits that both the *in camera* examination and the broader evidentiary presentation are critical stages unto themselves, a conclusion which means there can be critical stages within critical stages. That may be one way to look at the problem. No Supreme Court decision says that it is the only or right way.

We need not resolve how to define the scope of a critical stage in cases like this one. Nor do we need to decide whether this case presents a critical stage, whatever its scope, under

clearly established law. AEDPA governs our review, and we note only that these unanswered threshold questions portend this case's unsuitability for habeas relief. We can assume this case involves a critical stage, and whether that stage was the entire evidentiary presentation or only the *in camera* examination, Schmidt cannot meet the second part of the analysis—that he was so deprived of counsel as to mandate the presumption of prejudice.

### 2. Complete Deprivation

Schmidt's *Cronic*-based claim lies only when there is a "*complete* denial of counsel during a critical stage." *Flores-Ortega*, 528 U.S. at 483 (emphasis added) (citing *Cronic*, 466 U.S. at 659; *Penson*, 488 U.S. at 88; *Smith v. Robbins*, 528 U.S. 259, 286 (2000)); *see also Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam). Only for such out-and-out deprivations—those "on par with total absence"—does the Court's precedent require the presumption of prejudice. *Van Patten*, 552 U.S. at 125; *see also, e.g.*, *Donald* 135 S. Ct. at 1377.

Looking at the evidentiary presentation in its entirety, Schmidt suffered nothing near a complete denial of counsel. During the stage in question, Schmidt's lawyer filed the notice of the provocation defense, argued for its application during court hearings, briefed the law, and submitted a detailed offer of proof and an annotated witness list. Save for the one portion of the stage in which the trial court held the *in camera* examination, Schmidt had full access to counsel. No Supreme Court precedent suggests, much less establishes, that such facts warrant the presumption of prejudice.

Even if the proper critical stage is the *in camera* examination in isolation rather than the entire evidentiary

presentation, the result is the same. During the examination, as the trial court made clear, Schmidt's lawyer was "present" but could "not participat[e]." Schmidt insists that this deprived him of counsel, and, to an extent, we agree. But again: the deprivation must be "complete" to mandate the presumption of prejudice.

Schmidt and his counsel consulted immediately before the examination. In the examination, the trial court repeatedly referenced, and made plain that he was working from, the offer of proof Schmidt's lawyer drafted. The trial court later noted that the "nature and detail" of the offer of proof reflected that counsel had discussed its many factual assertions with Schmidt. Schmidt and his lawyer consulted again during a recess in the examination, as the state court of appeals observed. *See Schmidt*, 824 N.W.2d at 853. In that recess, Schmidt and his counsel—who had the benefit of hearing the trial court's questions and his client's answers—discussed the offer of proof, the focus of the *in camera* examination. *See id.* To be sure, Schmidt otherwise lacked assistance during the examination. But he was not entirely, or "completely," without his lawyer's help, and so a fair-minded jurist could conclude that the presumption does not apply. *Cf. Penson*, 488 U.S. at 88; *Cronic*, 466 U.S. at 659.

No clearly established holding of the Supreme Court mandates otherwise. We, for example, have twice said that the Court's decisions establish a presumption of prejudice only when counsel was "*physically absent* at a critical stage." *Morgan v. Hardy*, 662 F.3d 790, 804 (7th Cir. 2011) (emphasis added) (citations omitted); *McDowell v. Kingston*, 497 F.3d 757, 762 (7th Cir. 2007) (citations omitted); *see also Rodgers*, 569 U.S. at 64 (stating a circuit court may rely on circuit precedent to

determine whether it has recognized a "particular point in issue" as clearly established). We acknowledge that *Morgan* and *McDowell* overstated the law; the Supreme Court has in fact presumed prejudice for some constructive denials during a critical stage despite counsel's physical presence. *See Herring*, 422 U.S. at 865; *Ferguson*, 365 U.S. at 571. Yet we do not think a state court unreasonably errs for understanding the Court's decisions in the same way that we have. *See Woodall*, 572 U.S. at 422 n.3 (noting that divergent court of appeals decisions "illustrate the possibility of fairminded disagreement").

Or take how we explained the Court's precedent in *Kitchen v. United States*, 227 F.3d 1014 (7th Cir. 2000). In *Kitchen*, we described the Court's complete-denial cases (specifically in the appellate-stage context) as establishing that the presumption of prejudice applies only when "defendants have had *no* assistance of counsel for *any* issues." 227 F.3d at 1020–21 (emphases in original) (citing *Flores-Ortega*, 528 U.S. at 483). Not so for Schmidt, who again consulted with his lawyer before and during the examination and reviewed the offer of proof that his lawyer prepared before answering questions focused on that offer.

Consider also *Estelle v. Smith*. In *Estelle*, a defendant submitted to a court-ordered psychiatric examination, but neither the state nor the trial court notified his appointed counsel. 451 U.S. at 470–71. That evaluation "proved to be a 'critical stage'" in his prosecution because the state later used the findings against the defendant. *Id.* The Court, however, did not take issue with the counsel's absence *during* the critical stage. *See id.* It instead held that the defendant's inability to consult with his counsel before "making the significant decision of whether to submit to the

examination"—that is, his inability to consult with counsel before entering the critical stage—violated his right to counsel. *Id.* at 471. Apply *Estelle*'s reasoning here: Schmidt could, and did, consult with his counsel before submitting to (and during) the *in camera* examination, and thus the right-to-counsel problem does not necessarily follow.[4]

Of all the Supreme Court's decisions, *Ferguson* comes closest to establishing a principle that the state-court decision may have misapplied. *Cronic* described *Ferguson* as a presumed-prejudice case because, there, counsel was "prevented from assisting the accused during a critical stage" (though *Ferguson* did not use the phrase "critical stage"). 466 U.S. at 659 n.25. Specifically, *Ferguson* involved a Georgia law that prohibited a defendant from testifying in his own defense. 365 U.S. at 570–71. By extension, the law prohibited a defendant from having counsel elicit his testimony. The Court held that the Georgia law denied the defendant "the guiding hand of counsel" and was therefore unconstitutional. *Id.* at 572 (quoting *Powell*, 287 U.S. at 69).

To conclude that *Ferguson* clearly established a rule subject to misapplication here is to read it at too high a level of generality. *See Long*, 874 F.3d at 547. *Ferguson* held only that a state law effectively banning counsel from eliciting his client's trial testimony was unconstitutional. It did not establish that

---

[4] As the vacated panel opinion noted, *Estelle*, like this case, involved a "non-adversarial setting where the prosecutor was absent." *Schmidt*, 891 F.3d at 313. We express no opinion as to whether *ex parte* examinations—if ever necessary—require active and unhampered counsel. The point remains, however, that no clearly established Supreme Court holding tells us what constitutes a complete denial of counsel in those unique circumstances.

defendants have an absolute right to have their counsel elicit any important testimony, or else prejudice will be presumed. Here, in fact, Schmidt did not even ask that his counsel elicit his testimony—he objected to the need to adduce more evidence, but he agreed that an *in camera* examination was appropriate to address the trial court's concerns. What is more, *Ferguson* concerned (1) a defendant's statements (2) about his innocence (3) during a jury trial. This case concerns (1) a defendant's response to questions, in part guided by his written offer of proof, (2) regarding the admissibility of a defense (3) in chambers. Those distinctions matter. *Ferguson* worried about the "tensions of a *trial*," embarrassment before "*public* assemblies," the chance to establish a defendant's "*innocence*," and the risk that he could "*overlook*[ ] important" exculpatory facts. *Ferguson*, 365 U.S. at 594–96 (emphases added) (citations and quotations omitted). With none of those worries pressing here, it is hardly "obvious" that *Ferguson* must control. *Long*, 874 F.3d at 549.

One may still argue that where state action (as opposed to a lawyer's neglect) causes a less-than-complete deprivation during a critical stage, prejudice should still be presumed. A loose reading of *Cronic*, which noted that the Court has presumed prejudice when counsel was "prevented from assisting the accused during a critical stage," could support that view. 466 U.S. at 659 n.25 (citing, among other cases, *Geders*, 425 U.S 80; *Herring*, 422 U.S. 853; *Brooks*, 406 U.S. 605; *Ferguson*, 365 U.S. 570); *see also Strickland*, 466 U.S. at 692 (citing *Cronic* for the proposition that "prejudice is presumed … [after] various kinds of state interference with counsel assistance"). But that view would be mistaken, at least as far as clearly established law is concerned. The Court's decisions, *Cronic* included, speak of the "complete denial of counsel" at

a critical stage. *Van Patten*, 552 U.S. at 125 (quoting *Cronic*, 466 U.S. at 659); *Bell*, 535 U.S. at 696; *Flores-Ortega*, 528 U.S. at 483. There is no clearly established lesser standard for state-action denials.

*Glebe* makes that clear. *Glebe*, like *Herring*, involved a court-ordered restriction on summation. *Cronic* described *Herring* as a critical-stage case (though *Herring*, like *Ferguson*, did not use the phrase), and *Herring* held that a bar on all trial summation violated the right to counsel. *Cronic*, 466 U.S. at 659 n.25; *Herring*, 422 U.S. at 865. In *Glebe*, the Court considered whether a court-ordered *partial* bar on trial summation warranted the presumption of prejudice on habeas review. The Court said it did not, because its precedent, namely *Herring*, establishes only that the "*complete denial* of summation" requires the presumption. 135 S. Ct. at 431 (emphasis in original) (citing *Herring*, 422 U.S. 853). Even though a court order caused the deprivation, *Glebe* held the petitioner's claim to the prevailing standard that the Court's precedents establish—that of a "complete denial." *Id.* So too must we hold Schmidt's claim on habeas review.

The dissent sees the Supreme Court's jurisprudence differently. It focuses on the fact that an accused is entitled to effective counsel for every part of a critical stage. But the existence of that right does not mean courts must presume prejudice if it is infringed. The Court ruled out that possibility by requiring a "complete denial of counsel during a critical stage." *Flores-Ortega*, 528 U.S. at 483 (citing *Cronic*, 466 U.S. at 659).

The dissent also reads the Supreme Court's decisions to mean that courts may presume prejudice when the state interferes with the assistance of counsel. To get to that general

proposition, the dissent connects *Powell* (which concerned the last-minute appointment of counsel before trial), with *Holloway v. Arkansas*, 435 U.S. 475 (1978) (which concerned a lawyer's conflict of interests), with *Brooks*, *Herring*, and *Geders* (which, as noted, concerned the sequencing of a defendant's testimony, summation, and an overnight recess, respectively), and with *Ferguson*. This reading conflates decisions that the Court, starting in *Cronic*, has thought distinct for right-to-counsel purposes. *Cronic*, 466 U.S. at 659–61 & nn.25, 28 (citing *Brooks*, *Herring*, *Geders*, and *Ferguson* as critical-stage cases and *Powell* and *Holloway* as cases in which "surrounding circumstances made it so unlikely that any lawyer could provide effective assistance"); *see also Bell*, 535 U.S. at 695–96. The approach is also self-defeating. If we must take several dissimilar decisions and reduce them to blanket principles in order to arrive at a general proposition applicable here, the proposition is "far too abstract to establish clearly the specific rule" Schmidt needs. *Lopez*, 135 S. Ct. at 4.

The state-court decision was a reasonable application of Supreme Court law, namely the complete-denial requirement for the presumption of prejudice in critical-stage cases. We could end there, but we add another reason the state-court decision has support. Even eschewing the complete-denial requirement—and venturing beyond clearly established law[5]—a fair-minded jurist could conclude that this case's facts were

---

[5] The dissent criticizes our focus on the need for a "complete denial" to presume prejudice as a "new theory" in this case. The warden argued in his brief that Schmidt's denial was not complete, and the state court of appeals ruled similarly. *See Schmidt*, 824 N.W.2d at 853. That the vacated panel decision chose not to address the Supreme Court's complete-denial requirement does not make the theory new. *See Schmidt*, 891 F.3d at 318–21.

not "so likely to prejudice the accused" as to warrant the presumption of prejudice upon which Schmidt's case depends. *Cronic*, 466 U.S. at 658.

As noted, Wisconsin's adequate-provocation defense has "both subjective and objective components." *Schmidt*, 824 N.W.2d at 842. The primary purpose of the *in camera* examination was to assess Schmidt's subjective belief of provocation. For that reason, virtually all the trial court's questions were aimed at Schmidt's mental state at the time of the shooting. It inquired: "[W]hat was in your mind at that time?"; "[H]ow things entered into your mind at the time?"; "How did you contemplate these things on the 17th?" It wanted to know "what [Schmidt] contemplated at the time," and what "weighed on [his] mind." If in responding to these questions Schmidt had failed to convince the trial court of his subjective belief of provocation, perhaps his lack of full access to counsel while facing these questions would suggest prejudice. But that is not what happened. The trial court ruled that, based on Schmidt's proffer and his testimony, Schmidt lacked facts "that would drive a *reasonable* person to kill his spouse." It did not decide whether Schmidt lacked adequate subjective evidence but only ruled on the objective prong. The state then conceded on appeal that Schmidt had satisfied the subjective prong. *Schmidt*, 824 N.W.2d at 844 n.5, 850 n.8. The court of appeals, in turn, agreed with the trial court, ruling that Schmidt's defense fell short only for want of objectively adequate provocation evidence. *Id.* at 852.

Schmidt did not have full use of counsel during the examination, but a fair-minded jurist could find that circumstance not presumptively prejudicial. The trial court and court of appeals had plenty before them in deciding

whether Schmidt's evidence sufficed: Schmidt's motion, a brief arguing the defense's legal support, a written offer of proof setting forth the defense's factual support, a summary of 29 witnesses' testimony, counsel's oral argument, and 35 transcript pages of Schmidt's testimony.[6] Schmidt has not cited one fact or piece of evidence that he could have raised during the examination if only he had counsel. He, instead, argues that his testimony was filled with "trivial, irrelevant[ ] matters." That is hard to believe, because he prevailed on the subjective prong. But even if the argument held water, it is unclear how superfluous testimony would likely prejudice him. The state courts needed to look only for "some evidence" of adequate provocation, and we cannot presume that they are prone to distraction or obfuscation by a poorly performing witness. There are therefore grounds to think that the deprivation here did not render "the proceeding presumptively unreliable." *Flores-Ortega*, 528 U.S. at 484. At the least, "[n]o precedent of th[e] Court clearly forecloses that view." *Etherton*, 136 S. Ct. at 1152.

It is true, as the dissent points out, that the judges who have rejected Schmidt's right-to-counsel claim have had different reasons for doing so. Those judges have decided that Schmidt had adequate counsel (the state courts), that the

---

[6] At oral argument, Schmidt's lawyer emphasized that the state court's analysis rested on Schmidt's *in camera* testimony. This, according to Schmidt's lawyer, undermines the impact of Schmidt's other counseled opportunities to present evidence. The state-court decision did in fact examine the offer, *Schmidt*, 824 N.W.2d at 851–52, and to the extent it focused on Schmidt's testimony that is because on appeal Schmidt "relie[d] primarily upon the *in camera* testimony," *id.* at 846. Schmidt did not even discuss his annotated witness list in his opening brief to the court of appeals. *Id.* at 846 n.7.

examination was not a critical stage (the state court of appeals), that the examination was too incomparable to anything the Supreme Court has considered (the district court), that the examination was not a critical stage under clearly established law (the panel dissent), and that Schmidt was not completely denied counsel under clearly established law (our majority). The dissent thinks this divergence of thought suggests that denying Schmidt relief is an error. The opposite is true. That so many judges see Schmidt's claim differently underscores that there is room for fair-minded disagreement about how to view and resolve Schmidt's claim. *E.g.*, *Harrington*, 562 U.S. at 103.

That room exists because the Supreme Court has never addressed a case like this. Its decisions, instead, emphasize the limited reach of right-to-counsel claims that presume prejudice, especially when considered on habeas review. *See Donald*, 135 S. Ct. at 1377; *Van Patten*, 552 U.S. at 125. Without clearly established law mandating relief, we cannot grant it under AEDPA.

**B. Due Process Claim**

Schmidt also raises a due process claim. He argues on appeal that the trial court's "inquisitorial" (as opposed to adversarial) procedure for resolving the admissibility of his only defense "was so arbitrary" that it violated his right to present a defense. Schmidt admits that this is a "novel" argument. He submits, however, that novelty does not doom his claim—he argues that the claim should enjoy *de novo* review because the state court of appeals did not address it.[7]

---

[7] We are not so sure the state court of appeals "inadvertently overlooked" Schmidt's due process claim thus subjecting it to *de novo* review,

The warden argues that Schmidt has procedurally de-
faulted and waived this claim. There is another problem
worth addressing first. In its order denying Schmidt's peti-
tion, the district court certified the following for appeal:

> Schmidt's argument that the state court violated his right to
> present a defense when it ruled he had not met his burden
> on the state law affirmative defense of adequate provoca-
> tion.

That is not the argument Schmidt now advances. To be sure,
the argument he now advances is difficult to pin down. His
opening brief focused on the arbitrariness of the examina-
tion's procedure; on reply he submits that his perhaps "eso-
teric" claim is "not [focused on] the process per se or the result
per se" but the "*arbitrariness*, which suffused" both. At any
rate, the challenge is not one to the trial court's evidentiary
ruling *vis-à-vis* his right to present a defense.

"When a petitioner's case is subject to § 2253(c)," as this
case is, "non-certified claims are not properly before this
court." *Bolton v. Akpore*, 730 F.3d 685, 698 (7th Cir. 2013). We
have, moreover, "repeatedly reminded habeas corpus peti-
tioners, especially when represented by counsel, to request
permission before arguing non-certified claims." *Welch v.
Hepp*, 793 F.3d 734, 737–38 (7th Cir. 2015) (collecting cases).
That much aside, a "defect in a certificate concerning one

---

as the district court ruled. *Johnson v. Williams*, 568 U.S. 289, 303 (2013). Be-
fore the state court of appeals, Schmidt couched his due process argument
in his state-law argument that he was entitled to the defense of adequate
provocation. The state court of appeals held that he was not entitled to the
defense under state law, and under Schmidt's then-theory that holding
likely resolved his due process claim as well. *Schmidt*, 824 N.W.2d at 850–
52. We need not decide the issue, though, for reasons explained in the text.

claim does not deprive us of jurisdiction over that claim." *Id.* (citing *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012)). Looking beyond the certificate-of-appealability problem, we agree with the warden that the due process claim is procedurally defaulted and waived.

A habeas petitioner may not raise a federal claim that he has not exhausted in state court. 28 U.S.C. § 2254(b)(1)(A). He must instead fairly present his federal claim to the state courts so that they have a "fair opportunity" to consider and, if needed, correct the constitutional problem. *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). We have laid out four factors to determine whether a petitioner has defaulted a claim:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Brown*, 764 F.3d at 796 (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)). These factors are not applied mechanically. The "bottom line" is whether "in concrete, practical terms, … the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998) (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992)).

The court of appeals could not have been so alerted here. Schmidt concedes his claim is "novel" in the law. It is neither in the mainstream nor evocative of a specific constitutional right. True, Schmidt did cite *Chambers v. Mississippi*, 410 U.S.

284 (1973), and related cases to the state court of appeals. That, however, was not enough to flag to the state court the claim he now brings. *Chambers* did not deal with "a defendant's ability to present an affirmative defense"—which adequate provocation is under Wisconsin law—nor has *Chambers* been understood to apply in that context. *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993); *see also Kubsch v. Neal*, 838 F.3d 845, 858 (7th Cir. 2016) (en banc).

We afford relatively little leeway to habeas petitioners who try to reformulate due process arguments. *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001) (citing *Kurzawa*, 146 F.3d at 443). Schmidt's claim before the state court of appeals was that a "defendant's due process right to a fair trial renders it incumbent upon a trial court to err on the side of admitting evidence of a mitigation defense." That is a far cry from what he argues now, namely, "the trial court's inquisitorial procedure … was so arbitrary that it violated Schmidt's constitutional right to present a defense." These two claims are not variations of the same theory, *see, e.g.*, *McGee v. Bartow*, 593 F.3d 556, 566 (7th Cir. 2010); they are different in kind. Schmidt points to no cause, prejudice, or miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). His due process claim is procedurally defaulted.

It is also waived. Schmidt's argument at the district court was a straightforward one under *Chambers v. Mississippi*, challenging the trial court's "ruling" and "exclusion" of his defense. He did not, as he does now, challenge the *ex parte, in camera* examination as itself violative of due process.

### III. Conclusion

Nothing we have said should be mistaken as belief that the *ex parte*, *in camera* examination of Schmidt, held without his counsel's active participation and regarding his principal defense, was in fact constitutional. A pillar of the Sixth Amendment is the right to unhampered counsel; the aim of the Sixth Amendment is to protect the promise of a fair trial tested by adversaries. Trial courts must promote access to counsel and guard the adversarial process while it runs its course. These principles hold even when—especially when—courts meet uncharted waters filled with risk for an accused facing life in prison.

Applied here, trial courts should not opt to hold *ex parte* hearings and silence defense counsel over other, less severe alternatives without exceedingly good reasons. Even then, trial courts must, if necessary, obtain a knowing and voluntary right-to-counsel waiver from the accused for purposes of the hearing.

These, however, are our admonitions. They are not clearly established Supreme Court precedent dictating habeas relief in this case. No such precedent exists. For that reason, we AFFIRM the district court's judgment.

HAMILTON, *Circuit Judge*, joined by WOOD, *Chief Judge*, and ROVNER, *Circuit Judge*, dissenting. The state trial court violated Schmidt's right to counsel. *The judge was questioning the accused* on the merits of the case. Yet *the judge ordered his lawyer not to participate* in the hearing. This constitutional violation was clear even under the demanding standard for federal habeas corpus relief in 28 U.S.C. § 2254(d)(1).

The accused in a criminal case is entitled to the assistance of counsel in any "critical stage" of the prosecution, a category that applies broadly. E.g., *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (describing a "critical stage" as "a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused"). The Supreme Court's critical-stage cases show beyond reasonable debate that the judge's interrogation of Schmidt about his mitigation defense was a critical stage. By commanding the lawyer to stay silent while the judge interrogated his client, the judge violated the right to counsel that is a foundation of our system of criminal justice. Denying counsel at such a critical stage requires relief without separate proof of prejudice from the denial. E.g., *Bell v. Cone*, 535 U.S. at 695–96; *United States v. Cronic*, 466 U.S. 648, 658–60 (1984).

The majority tries not to decide the critical-stage issue and then denies habeas relief on the new theory that the state court's denial of counsel was not quite "complete." The theory does not hold up against the Supreme Court's right-to-counsel cases, which show that a "complete" denial is *sufficient* to presume prejudice, but it's not *necessary*. The majority, not the Supreme Court, has introduced here the notion that only a "complete" denial of counsel requires a presumption of prejudice. But see *Cronic*, 466 U.S. at 659 n.25 ("The Court

has *uniformly* found constitutional error without any showing of prejudice when counsel was either totally absent, *or prevented from assisting the accused during a critical stage of the proceeding*.") (collecting cases discussed below) (emphases added).

If the judge had simply said that he wanted to hear what the accused had to say without any counsel even present, I could not have imagined, at least before this case, that any court in the United States would find such interrogation acceptable without a valid waiver of counsel by Schmidt himself.

The only difference here is that Schmidt's lawyer was physically present in the room, but the judge might as well have gagged him: he ordered the lawyer not to "participate" in this critical stage of the prosecution. I don't see a constitutional difference between an absent lawyer and a silenced lawyer.

The majority's own discomfort with the state court's extraordinary procedure shines through from beginning to end: "constitutionally dubious," "we discourage the measure," "we … do not endorse the constitutionality of the trial court's unusual … examination," "these … are our admonitions." That discomfort is fully justified.

Readers will notice, in addition to the majority's discomfort, that the theories to justify denying relief to Schmidt kept shifting. The state trial court concluded that Schmidt was not denied counsel at the *ex parte* hearing because his counsel submitted the written offer of proof, made an oral argument, and conferred with Schmidt during the brief recess for the judge's telephone call. That was wrong because Schmidt's testimony

was itself a critical stage. Even if one thinks of the entire pretrial proceeding as the critical stage, Schmidt was entitled to counsel for all of the critical stage, not just part of it. The state appellate court found that the *ex parte* hearing was not a critical stage at all, but "merely a supplementary proceeding conducted for his benefit," so that Schmidt was not entitled to counsel at all. *State v. Schmidt*, 2012 WI App 113, ¶¶ 46–48, 344 Wis. 2d 336, 362–63, 824 N.W.2d 839, 852–53. That was wrong because the hearing so easily satisfied the Supreme Court's criteria for a critical stage: the accused confronted the state, and his interests were at greater risk without counsel. E.g., *United States v. Wade*, 388 U.S. 218, 227 (1967).

The federal district court focused on the unique *ex parte* procedure here, concluding briefly that habeas relief should be denied because the Supreme Court has not yet confronted an identical situation of silenced counsel in an *in camera* hearing. *Schmidt v. Pollard*, No. 13-CV-1150, 2017 WL 1051121, at *11 (E.D. Wis. Mar. 20, 2017). That was more understandable but wrong because § 2254(d)(1) does not insist on such a close fit where the violation of rights is so clear. E.g., *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).

The panel dissent focused on the absence of the prosecutor, reasoning that the Supreme Court's critical-stage cases did not require state courts to treat Schmidt's testimony as a critical stage. *Schmidt v. Foster*, 891 F.3d 302, 322 (7th Cir. 2018) (Barrett, J., dissenting). That was wrong because the accused was still facing the power of the state (in the person of the judge) during the prosecution, and his interests were very much at risk, especially without counsel.

The en banc majority offers yet another theory: assuming that Schmidt's testimony was a critical stage, the denial of

counsel was not "complete" and did not prejudice him, or at least so the state courts might reasonably have concluded. Cf. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (federal habeas review should ordinarily focus on state courts' stated reasons rather than those that might be imagined). The majority's new theory requires it to embrace at least one of two mistaken propositions. The first is that Supreme Court precedents allow state courts to deprive a defendant of counsel for *part* of a critical stage of the prosecution. But see *Ferguson v. Georgia*, 365 U.S. 570 (1961). The second is that Supreme Court precedents allow state courts to silence a lawyer in a critical stage as long as the lawyer is physically present in the room. But see *Cronic*, 466 U.S. at 569 n.25 (collecting the relevant cases). Both propositions are contrary to Supreme Court precedent.

It is widely recognized that the Supreme Court has recently been using summary reversals of decisions granting habeas relief to push lower federal courts toward faithful application of the demanding standard in 28 U.S.C. § 2254(d)(1). In this case, the majority has over-corrected. It denies habeas relief in the face of a blatant violation of the right to counsel. It does so by suggesting immaterial distinctions that the Supreme Court itself has refused to draw in its right-to-counsel decisions. We should grant a writ of habeas corpus to allow petitioner Schmidt a fair chance to show that he was guilty of second-degree murder rather than first-degree murder. I respectfully dissent.

I.   *The Facts*

Schmidt's testimony in the *ex parte*, *in camera* hearing addressed the only contested issue in his case. He admitted shooting his wife while he was still standing over her holding a smoking gun. He faced a mandatory life sentence for first-

degree murder. The only way he might have avoided a life sentence was to show that he acted under "adequate provocation," which could have mitigated the crime to second-degree murder. See Wis. Stat. §§ 939.44, 940.01(2)(a).

The judge decided to evaluate the proposed defense before trial. The judge wanted to see if Schmidt could satisfy the modest "some evidence" standard under state law for submitting the defense to the trial jury. See *State v. Schmidt*, 2012 WI App 113, ¶¶ 8–11, 344 Wis. 2d 336, 343–44, 824 N.W.2d 839, 843. We know that Schmidt's testimony was critical for the judge's pretrial decision. The judge had already reviewed a written submission from Schmidt's counsel and had heard argument from both the defense lawyer and the prosecutor. Those submissions had not convinced the judge either way. Before making a decision, the judge wanted to hear directly from Schmidt himself.

The majority places great, perhaps even decisive, importance on the brief recess late during Schmidt's testimony during the *ex parte* hearing. The recess came as a surprise to everyone except the judge, who announced that he needed to make a telephone call. When Schmidt's lawyer asked the judge for permission merely to talk with his client—a phrase that deserves emphasis: merely *to talk* with his client during a recess—the judge told the lawyer he could only review with Schmidt the written offer of proof summarizing the intended defense. This limited opportunity for a brief talk with counsel was not enough to satisfy the Sixth Amendment "in any substantial sense," and to conclude otherwise "would simply be to ignore actualities." *Powell v. Alabama*, 287 U.S. 45, 58 (1932); see also *Geders v. United States*, 425 U.S. 80, 91 (1976) (court

violated right to counsel by preventing counsel from conferring with client during overnight trial recess). At no point during the *in camera* examination was Schmidt's counsel allowed to question him directly to focus attention on the key facts or to guide him toward meeting his burden of production for his defense in mitigation.

II.  *Denial of Schmidt's Right to Counsel*

The Supreme Court has taught that it is supposed to be difficult for a habeas petitioner to satisfy the standard of § 2254(d)(1). Schmidt must show that the state courts not only erred but unreasonably applied controlling Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Since the 1996 amendment of § 2254(d), habeas corpus relief is reserved for rare cases in which state courts have strayed from clearly established federal law. This case meets that standard. Part II-A explains why, under controlling Supreme Court precedent, Schmidt's testimony was a critical stage of the prosecution. Part II-B explains the principal mistakes in the majority's reasoning, which seeks to excuse the state court's denial of counsel in a critical stage on the theories that a state court may deny the accused counsel for *part* of a critical stage and/or that silencing the lawyer by court order during the critical hearing was allowed because it was not a "complete" denial of counsel as long as the lawyer was physically present.

A.  *Critical Stage*

The Sixth Amendment guarantees that in "all criminal prosecutions, the accused shall enjoy the right" to "have the Assistance of Counsel for his defence." The Supreme Court has long recognized that the right applies not only at trial but

also at all "critical stages" of the adversary process. E.g., *Powell v. Alabama*, 287 U.S. 45, 57 (1932); *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970) (plurality opinion); *Hamilton v. Alabama*, 368 U.S. 52, 53–55 (1961); *United States v. Wade*, 388 U.S. 218, 227–28 (1967); *Rothgery v. Gillespie County*, 554 U.S. 191, 212–13 & n.16 (2008). The majority tries not to base its denial of habeas relief on the absence of a critical stage. The majority questions whether this hearing was a critical stage but in the end assumes without deciding that it was. Still, the critical-stage issue must be addressed here. The majority's ultimate conclusion about a less than "complete" denial of counsel depends on its views on the critical-stage issue.

The judge's *ex parte*, *in camera* interrogation of the accused on the merits of his case was certainly a critical stage under the Court's Sixth Amendment right-to-counsel decisions. The majority complains that the Supreme Court has not provided one single definition of a critical stage. The slightly different phrasing in different cases does not reflect substantive uncertainty about the broad and inclusive standard. In *Bell v. Cone*, the Court concisely said that a critical stage is "a step of a criminal prosecution, such as arraignment, that held significant consequences for the accused." 535 U.S. at 695–96. In *Wade*, the Court explained that a court must "scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance at the trial itself," and the court must analyze "whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." 388 U.S. at

227. And in *United States v. Ash*, the Court said we must "determine whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. 300, 313 (1973).

However the standard is phrased, the judge's interrogation of the accused easily satisfies it. More important than the particular phrasing of the standard are the many Supreme Court decisions actually applying the standard. The sheer number and range of these cases, discussed below, show that the right to counsel at a critical stage is not narrow and fact-bound.

It's not surprising that the Supreme Court has not considered an *ex parte, in camera* hearing on a substantive issue quite like this one. Virtually all judges in American courts understand that they simply may not do what this judge did. This hearing was an extraordinary, apparently unprecedented, departure from the most basic standards of criminal procedure in our system of criminal justice: "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *United States v. Cronic*, 466 U.S. 648, 655 (1984), quoting *Herring v. New York*, 422 U.S. 853, 862 (1975).

By questioning the accused directly, the trial judge here improvised a procedure that abandoned that "very premise of our adversary system of criminal justice." Then he prohibited defense counsel from participating. This hearing thus violated Schmidt's Sixth Amendment right to the assistance of counsel, which "has been understood to mean that there can be no restrictions upon the function of counsel in defending a

criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." *Herring*, 422 U.S. at 857, quoted in *Cronic*, 466 U.S. at 656 n.15.

In any event, the Supreme Court has explained that 28 U.S.C. § 2254(d)(1) does not require "federal courts to wait for some nearly identical factual pattern" before granting relief. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007), quoting *Carey v. Musladin*, 549 U.S. 70, 81 (2006) (Kennedy, J., concurring in judgment); see also *Williams v. Taylor*, 529 U.S. 362, 407 (2000) (holding that state courts can unreasonably apply clearly established federal law to facts the Supreme Court has not considered). "Nor does [§ 2254(d)(1)] prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts 'different from those of the case in which the principle was announced.'" *Panetti*, 551 U.S. at 953, quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). What matters is the extent of guidance provided by relevant Supreme Court precedents.

Here that guidance is extensive. The Supreme Court has treated as a critical stage every stage of the criminal process between arraignment and appeal that either addresses a substantive issue or risks loss of a procedural right. Critical stages include: a preliminary hearing at which defendant could cross-examine witnesses and otherwise test the evidence against him; arraignments at which defenses must be asserted; entry of a plea; pretrial identification through an in-person line-up; pretrial interrogation by a government informant; sentencing hearings; and deferred sentencing hearings that revoke probation. See *Coleman v. Alabama*, 399 U.S. at 9 (plurality); *id.* at 11 (Black, J., concurring) (preliminary

hearing where defendant could test evidence to avoid indict-
ment and build record for trial); *Hamilton v. Alabama*, 368 U.S.
at 54 (arraignment where defenses could be "irretrievably
lost, if not then and there asserted"); *White v. Maryland*, 373
U.S. 59, 60 (1963) (entry of plea); *Moore v. Michigan*, 355 U.S.
155, 156, 159 (1957) (entry of plea); *United States v. Wade*, 388
U.S. at 236–37 (pretrial in-person identification); *Massiah v.
United States*, 377 U.S. 201, 206 (1964) (pretrial interrogation);
*Townsend v. Burke*, 334 U.S. 736, 740–41 (1948) (sentencing);
*Mempa v. Rhay*, 389 U.S. 128, 137 (1967) (deferred sentencing
and revocation of probation).

The Court has explained its decisions by focusing on the
consequences of the particular stage, and in particular on con-
sequences for the defendant's ability to receive a fair trial. See,
e.g., *Wade*, 388 U.S. at 227. Looking both at what the Supreme
Court has done and at what it has said shows beyond reason-
able dispute that testimony on a contested substantive issue
is a critical stage of the proceedings. The Court has repeatedly
found that pretrial stages were critical as long as the accused
risked serious consequences affecting the fairness of the trial.
In the face of the extensive body of case law, the majority has
not identified any Supreme Court case even suggesting, let
alone holding, that a hearing comparable to the one in this
case was not a critical stage, or offered a plausible theory for
saying it was not.

The *ex parte*, *in camera* hearing certainly had the potential
to prejudice Schmidt's defense. The Sixth Amendment analy-
sis focuses on whether there is a potential for prejudice given
what or whom the uncounseled defendant must confront and
what counsel could do later to fix the defendant's mistakes.
E.g., *Ash*, 413 U.S. at 313, 317; *Coleman*, 399 U.S. at 7 (plurality);

*id.* at 11 (Black, J., concurring); *Wade*, 388 U.S. at 227. In this case, Schmidt was asked to show before trial that he could meet the burden of production to go forward at trial with his only defense in mitigation. No stage was more critical. What happened in the judge's chambers settled Schmidt's fate.

The risks for Schmidt were evident. Without assistance of counsel, he faced the risks that the judge might lose sight of the elements of adequate provocation or might fail to separate the wheat from the extensive chaff in Schmidt's rambling answers. There was also a risk that Schmidt would help the judge, perhaps unconsciously, convert the hearing into a mini-trial on the ultimate merits of the defense rather than a debate about only the burden of production. If Schmidt had met the burden of production—and only that burden—he would have had the right to present his evidence and to argue his defense to the jury. The trial judge's oral ruling suggests that this risk might have been realized here: "The Court finds that the circumstances that led to the death of Kelly Wing did not involve a provocation and it was not an adequate provocation and denies the motion." That conclusion sounds a lot more like a decision on the ultimate merits of the defense than a decision on the burden of production.

In addition, Schmidt's counsel could not fix later the harm done by Schmidt's rambling answers. The judge, having silenced counsel in the *ex parte* hearing, rejected the defense shortly after the hearing ended. When counsel tried to revisit the issue shortly before trial, the judge refused, saying he had already made his decision. Because counsel could not later undo the harm to Schmidt, the risk of prejudice at the evidentiary hearing affected his trial.

Finally, there should be no doubt that Schmidt could have benefited from his attorney's help at the hearing. In *Ferguson v. Georgia*, 365 U.S. 570, 594–96 (1961), the Supreme Court explained the need for counsel in a context very close to this case. At that time, Georgia prohibited the accused from testifying in his own defense, but state law allowed the accused to make an unsworn statement to the jury. In making such a statement, however, the accused ordinarily had to do so without questioning by his counsel to guide him.

The Supreme Court held in *Ferguson* that the accused had a right to have his lawyer question him to help elicit his statement. In explaining this conclusion, the Court quoted Chief Justice Cooley, the nineteenth-century jurist from Michigan, in a lengthy passage that recognizes how essential a lawyer's help can be, and that fits Schmidt's case well:

> But to hold that the moment the defendant is placed upon the stand he shall be debarred of all assistance from his counsel, and left to go through his statement as his fears or his embarrassment may enable him, in the face of the consequences which may follow from imperfect or unsatisfactory explanation, *would in our opinion be to make, what the statute designed as an important privilege to the accused, a trap into which none but the most cool and self-possessed could place himself with much prospect of coming out unharmed*. An innocent man, charged with a heinous offence, and against whom evidence of guilt has been given, is much more likely to be overwhelmed by his situation, and embarrassed, when called upon for explanation, than

> the offender, who is hardened in guilt; and *if he is unlearned, unaccustomed to speak in public assemblies, or to put together his thoughts in consecutive order any where, it will not be surprising if his explanation is incoherent, or if it overlooks important circumstances.*

365 U.S. at 595–96 (emphases added), quoting *Annis v. People*, 13 Mich. 511, 519–20 (1865) (reversing conviction where trial judge had not allowed defense counsel to remind defendant he had omitted a material fact from his statement).

Schmidt was not innocent, but the danger that *Ferguson* described came to pass here. Without the guidance of counsel's questioning, Schmidt provided a rambling and disjointed narrative, much like the defendants in *Ferguson* and *Annis*. Even without the assistance of counsel, Schmidt's account of the circumstances came close to supporting his defense in mitigation. (The state appellate court said that was a "close question.") The "Assistance of Counsel for his defence" could have helped Schmidt organize the facts, present a coherent and legally relevant response, and meet the burden of production. Without counsel acting in that role at this critical stage, "a serious risk of injustice infects the trial itself." *Cronic*, 466 U.S. at 656, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980).

The majority, however, struggles with the critical-stage issue, unsure whether it should focus on the entire pretrial evaluation of Schmidt's mitigation defense or on only Schmidt's interrogation by the judge. Precedent and common sense show that both are properly considered critical stages for purposes of the Sixth Amendment.

In terms of precedent, for example, *Ferguson* shows that when the accused tells the trier of fact his story, that's a critical stage *by itself*. Denying assistance of counsel for just that part of the trial required reversal, though counsel was present and active in defending during the rest of the trial. See also, e.g., *Herring*, 422 U.S. at 857 (closing argument was critical stage).

In terms of common sense, consider the alternative view adopted by the state appellate court, that Schmidt's testimony was not itself a critical stage. If that were correct, then the judge could have excluded Schmidt's lawyer entirely without violating the right to counsel. Yet in light of the Supreme Court's many decades of right-to-counsel decisions, it is hard to imagine a more clear-cut example of an unconstitutional denial of counsel. Schmidt was entitled to the assistance of counsel both while he was testifying and throughout the pretrial proceeding, just as he was throughout the prosecution. On the other side of the coin, neither the Wisconsin appellate court, the state's lawyers, nor the majority has offered a theory for treating Schmidt's testimony as anything other than a critical stage that can be reconciled with the Supreme Court's expansive treatment of the right to counsel.[1]

B. *The Violation of Schmidt's Right to Counsel*

The judge's order silencing Schmidt's lawyer during the interrogation violated Schmidt's right to counsel. The state

---

[1] The majority questions whether it's possible to have "critical stages within critical stages." Ante at 16. Of course it is. A trial is a critical stage; so is just the trial testimony of an eyewitness to the crime. A motion to suppress is a critical stage; so is just the testimony of the police officer that the accused consented to the search. It would be unreasonable to conclude otherwise and to think the accused could be denied counsel for *any* of those portions of the prosecution.

courts' different conclusion was, in terms of § 2254(d)(1), an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

The Sixth Amendment, of course, guarantees the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Cronic*, 466 U.S. at 654; *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A lawyer can be constitutionally ineffective either because of the lawyer's own errors or because the government interferes with the lawyer's performance. *Strickland*, 466 U.S. at 687, 692; *Cronic*, 466 U.S. 658–60 (categorizing circumstances when government interference with attorney performance violates Sixth Amendment and prejudice is presumed). Interference is what happened here, by judicially-enforced silence.

### 1. *The Presumption of Prejudice*

The government violates the Sixth Amendment when it interferes to such an extent that, "although counsel is available to assist the accused," the "likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct." *Cronic*, 466 U.S. at 659–60. The Supreme Court has applied the presumption of prejudice to a wide variety of forms of interference with counsel at all stages of prosecutions. And it has done so where the interference fell well short of what the majority calls a "complete" denial of counsel.

As early as *Powell v. Alabama*, the Court held that "defendants were not accorded the right of counsel in any substantial sense" when the court appointed defense lawyers for the

Scottsboro Boys but did so on the morning of trial, giving them no adequate time to prepare for trial. 287 U.S. at 57–58.

In *Ferguson v. Georgia*, the Court found unconstitutional a rule that prohibited defense counsel—though physically present at trial and assisting in all other portions of the trial—from directly examining a defendant who chose to speak in his own defense. 365 U.S. at 596.

In *Geders v. United States*, the Court found that "an order preventing petitioner from consulting his counsel 'about anything'" overnight during trial "impinged upon his right to the assistance of counsel." 425 U.S. 80, 91 (1976).

In *Brooks v. Tennessee*, the Court held that a rule requiring a defendant to testify first or not at all deprived the accused of "the 'guiding hand of counsel' in the timing of this critical element of his defense." 406 U.S. 605, 612–13 (1972).

In *Herring v. New York*, the Court held that complete denial of counsel's ability to offer a summation was "a denial of the basic right of the accused to make his defense." 422 U.S. at 859.

And in *Holloway v. Arkansas*, the Court found that the "mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee" when the state refused to appoint counsel free of conflicts of interest. 435 U.S. 475, 490 (1978). The lawyer's "conflicting obligations … effectively sealed his lips on crucial matters." *Id*.

In all of these cases, the Court explained in *Cronic*, the interference with defense counsel had led to a presumption of prejudice. 466 U.S. at 659–61. The Court added in *Cronic* that it had "*uniformly* found constitutional error" when counsel was "either totally absent, *or prevented from assisting the accused*

during a critical stage." 466 U.S. at 659 n.25 (emphases added) (collecting Supreme Court's cases).

Given these cases and the Court's own summary of them, it is simply not reasonable to conclude that the physical presence of a silenced lawyer satisfies the Sixth Amendment or avoids the presumption of prejudice. Schmidt's counsel was, in the trial judge's own words, "just … present" and "not saying anything" during the hearing. The judge told Schmidt—and assured the prosecutor—that his lawyer would not speak during the hearing. Once in chambers, the judge repeated the command that Schmidt's lawyer not participate. And throughout the *ex parte* hearing, Schmidt spoke uninterrupted by his counsel for long enough to fill thirty-five transcript pages. The judge addressed Schmidt directly, not his lawyer. Consistent with the judge's assurance to the prosecutor, the judge never gave the lawyer an opportunity to question Schmidt himself, to focus on key facts or to fill in gaps.

The state—in the person of the judge—thus prevented Schmidt's lawyer from performing the "role that is critical to the ability of the adversarial system to produce just results." *Strickland*, 466 U.S. at 685. Schmidt's lawyer was not allowed to speak while the judge conducted his own interrogation of Schmidt on the most important issue in his defense. It was objectively unreasonable for the state court to conclude that Schmidt's counsel could have provided effective assistance and meaningfully tested the arguments against the provocation defense by "not saying anything." See *Cronic*, 466 U.S. at 656, citing *Anders v. California*, 386 U.S. 738, 743 (1967) (summarizing Supreme Court precedent requiring counsel acting as an advocate).

### 2.  *The Majority's Erroneous Premises*

The majority concedes that Schmidt was denied counsel "to an extent," ante at 18, but justifies denial of habeas relief on the theory that Schmidt's deprivation of counsel was not "complete," so that the presumption of prejudice does not apply. The majority offers two branches of reasoning to support this conclusion. Both run contrary to clear Supreme Court precedents on the right to counsel.

### a.  *Denial for Part of a Critical Stage?*

One branch of reasoning requires the majority to take sides on the issue it says it does not decide: whether to consider Schmidt's interrogation as a critical stage by itself. To conclude that the denial of counsel was not complete, the majority expands the lens to view the entire pretrial proceeding to evaluate the mitigation defense: "Schmidt's lawyer filed the notice of the provocation defense, argued for its application during court hearings, briefed the law, and submitted a detailed offer of proof and an annotated witness list." Ante at 17. That is all true but beside the point, as a matter of fact and law.

As a matter of fact, the judge clearly had not made up his mind based on that information submitted with the lawyer's assistance. The decision point for the judge was his *in camera* interrogation. Shortly after it ended, the judge made a final decision that Schmidt would not be allowed to present his defense to the jury. Schmidt was denied counsel during that critical event due to the court's order silencing his lawyer.[2]

_____

[2] Since Schmidt's testimony in the *in camera* hearing was so central to the judge's decision, it is difficult to understand the state appellate court's

As a matter of law, allowing a defense lawyer to submit written and oral arguments cannot justify excluding or silencing the lawyer for his client's oral testimony. Consider, for example, a motion to suppress evidence in a criminal case. The defense lawyer submits a brief and affidavits in advance of the evidentiary hearing and then makes an opening statement. Could the judge then send the lawyer away (or silence her) during the live witness testimony, or even the defendant's own testimony? Surely not, yet under the majority's rationale, it would seem to be acceptable for the judge simply to excuse the defense lawyer while her client is cross-examined, whether in a hearing on a motion to suppress or at trial. After all, the lawyer would have participated in all other aspects of the hearing or trial. Under the majority's reasoning, there would not be a "complete" denial of counsel at that critical stage of the trial.

This reasoning runs contrary to *Ferguson* and *Herring*, among other cases. In both, a state court prevented counsel from providing effective assistance at a critical stage within a larger critical stage. I am aware of no support for the majority's logic in the Supreme Court's critical-stage jurisprudence, and I hope that no court would follow the majority's logic to the conclusion allowing denial of counsel for "part" of any critical stage. Yet the majority's insistence that only a supposedly "complete" denial of counsel supports a presumption of prejudice certainly points that way.

---

treatment of that hearing as not a critical stage but "merely a supplementary proceeding conducted for [Schmidt's] benefit." See *Schmidt*, 2012 WI App. 113 ¶ 46, 344 Wis. 2d at 362, 824 N.W.2d at 852.

b. *Denial of Counsel Need Not Be "Complete"*

So let's shift back to treat the *in camera* examination itself as a critical stage. It is beyond dispute that Schmidt's counsel was silenced for the entirety of the judge's questioning, and the judge never modified his order to offer counsel an opportunity to supplement.

The majority builds its entire decision on the premise that Supreme Court precedent requires a "complete" denial of counsel to invoke the presumption of prejudice. See ante at 17–26. That premise is demonstrably wrong. Start with *United States v. Cronic*, where the Court described the "complete denial of counsel" as the "[m]ost obvious" situation for presuming prejudice. 466 U.S. at 659. It is surely correct that a "complete" denial of counsel is sufficient to invoke the presumption of prejudice, but *Cronic* and other cases cannot be read to say a "complete" denial is necessary to invoke that presumption.

In that same paragraph, *Cronic* dropped a footnote that shows the majority's reading of Supreme Court precedent is simply wrong:

> The Court has *uniformly* found constitutional error without any showing of prejudice when counsel was either totally absent, *or prevented from assisting the accused during a critical stage of the proceeding*. See, e.g., *Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605, 612–613 (1972); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961); *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); *Ferguson v. Georgia*, 365

U.S. 570 (1961); *Williams v. Kaiser*, 323 U.S. 471,
475–476 (1945).

466 U.S. at 659 n.25 (emphases added). Of the cited cases,
*Geders*, *Herring*, *Brooks*, and *Ferguson* fit the description that
counsel was "prevented from assisting the accused during a
critical stage of the proceeding." (In *Hamilton*, *White*, and *Williams*, the accused had no counsel at a critical stage.)

In the text, *Cronic* then explained that the presumption of
prejudice applied in the Scottsboro Boys case, *Powell v. Alabama*, because the same-day appointment of counsel in the
capital case made it so unlikely that even a fully competent
lawyer could provide effective assistance. 466 U.S. at 659–61.
*Cronic* went on to collect other cases where counsel were present but forced to go to trial on schedules that made effective
assistance impossible. 466 U.S. at 661 n.28. Footnote 28 also
explained that ineffectiveness is presumed (i.e., prejudice is
presumed) when counsel "actively represented conflicting interests," citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980);
*Flanagan v. United States*, 465 U.S. 259, 268 (1984); *Holloway v.
Arkansas*, 435 U.S. at 489–90; and *Glasser v. United States*, 315
U.S. 60, 67–77 (1942).

In short, while a "complete" denial of counsel is sufficient
to invoke the presumption of prejudice, the *Cronic* opinion itself rebuts the majority's assertion that "the denial must be
'complete' to warrant the presumption of prejudice." Ante at
14.[3]

---

[3] Given the clear language in *Cronic* discussed above, I do not see how
the majority can describe this account as a "loose reading of *Cronic*." Ante
at 21.

Nor do later cases fill in that gap for the majority. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000), held that a defense lawyer's refusal to file a notice of appeal upon his client's request was ineffective per se, requiring relief in the form of permission to pursue an appeal without requiring proof of prejudice. The *Flores-Ortega* opinion quoted and cited cases to the effect that a complete denial of counsel supports a presumption of prejudice. *Id*. at 483, citing *Robbins*, at 286 ("denial of counsel altogether … warrants a presumption of prejudice"), and *Penson v. Ohio*, 488 U.S. 75, 88–89 (1988) ("complete denial of counsel on appeal requires a presumption of prejudice"). Again, these comments to the effect that a "complete" denial of counsel invokes the presumption of prejudice do not show that *only* a complete denial will suffice. And the language in *Flores-Ortega* cannot reasonably be read to erase from the books *Cronic*, *Holloway*, *Geders*, *Herring*, *Brooks*, *Powell*, and *Ferguson*, which show that the presumption of prejudice applies to less-than-complete denials of counsel when a court makes it impossible for counsel to provide effective assistance.

To support its requirement of "complete" denial, the majority also cites *Wright v. Van Patten*, 552 U.S. 120, 125 (2008), where the Court held that its precedents did not require a presumption of prejudice where a state court allowed the defense lawyer to appear at a guilty-plea hearing by speakerphone. *Wright* quoted, among other things, the critical note 25 from *Cronic*, saying that prejudice is presumed when counsel is either totally absent or prevented from assisting the accused during a critical stage of the proceeding. 552 U.S. at 125. *Wright* did not impose a new requirement of "complete" denial of counsel, erasing in passing *Cronic* and the cases that it (and I have) cited. Here's the key passage from *Wright*:

> Our precedents do not clearly hold that counsel's participation by speakerphone should be treated as a "complete denial of counsel," on par with total absence. Even if we agree with Van Patten that a lawyer physically present will tend to perform better than one on the phone, it does not necessarily follow that mere telephone contact amounted to total absence *or "prevented [counsel] from assisting the accused,"* so as to entail application of *Cronic*. The question is not whether counsel in those circumstances will perform less well than he otherwise would, but whether the circumstances are likely to result in such poor performance that an inquiry into its effects would not be worth the time.

552 U.S. at 125 (emphasis added). This passage from *Wright* also cannot be fairly read to impose a new requirement of "complete" denial of counsel. It restated the *Cronic* standard, which, as shown above, allows the presumption of prejudice in a wide range of circumstances in which a trial court prevents a lawyer who is present from providing effective assistance. And the lawyer in *Wright* participated in a plea hearing by speakerphone. He could at least be heard. That cannot reasonably be compared to this case, where the judge's order silenced the lawyer.

To support its assertion that only a "complete" denial of counsel will invoke the presumption of prejudice, the majority also quotes our decision in *Kitchen v. United States*, 227 F.3d 1014 (7th Cir. 2000). The majority writes: "In *Kitchen*, we described the Court's complete-denial cases (specifically in the appellate-stage context) as establishing that the presumption

of prejudice applies only when 'defendants have had *no* assistance of counsel for *any* issues.' 227 F.3d at 1020–21 (emphases in original) (citing *Flores-Ortega*, 528 U.S. at 483)." Ante at 19. The critical "only" in that sentence comes from the majority here, not from *Kitchen*, let alone from the Supreme Court. The same is true for all of the majority's other attempts to introduce "only" into the standard for presuming prejudice.

Instead, *Kitchen* correctly cited *Cronic* and *Strickland* regarding the presumption of prejudice, 227 F.3d at 1020, and concluded that Kitchen's claim of ineffective assistance of appellate counsel required proof of prejudice under *Strickland*. Kitchen had in fact had counsel on appeal who pursued several issues, including some that were successful. We correctly treated Kitchen's claim as one challenging his lawyer's strategic choice of issues to pursue on appeal. 227 F.3d at 1021. Having appellate counsel who chooses which issues to pursue cannot reasonably be compared with having a lawyer whom the trial judge has silenced. *Kitchen* does not support the majority's attempt to impose "complete" denial as a new requirement for the presumption of prejudice.

The majority also argues that a state court could reasonably conclude that the mere physical presence of counsel should defeat the presumption of prejudice. To support this notion, the majority quotes two of our precedents. Yet even the majority acknowledges the quoted passages from those two cases are demonstrably wrong. In *Morgan v. Hardy*, 662 F.3d 790 (7th Cir. 2011), we wrote: "The Supreme Court has consistently limited the presumption of prejudice to cases where counsel is physically absent at a critical stage." *Id*. at 804, citing *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (withdrawal of appellate counsel in criminal case), *White v. Maryland*, 373

U.S. 59, 60 (1963) (no counsel for entry of plea in capital case), and *Hamilton v. Alabama*, 368 U.S. 52, 54–55 (1961) (no counsel for arraignment where defenses could be lost if not asserted). That passage in *Morgan* had been copied verbatim, including even the citations and their parentheticals, from the second case the majority cites, *McDowell v. Kingston*, 497 F.3d 757, 762 (7th Cir. 2007), though *Morgan* did not cite *McDowell*.

Contrary to that language in *Morgan* and *McDowell*, and as shown above, the Supreme Court in fact has decided quite a few cases applying a presumption of prejudice where counsel were physically present but prevented in a variety of ways from providing effective assistance. E.g., *Holloway*, 435 U.S. at 490 (lawyer silenced on key issue by conflict of interest); *Herring*, 422 U.S. at 859 (closing argument prohibited); *Geders*, 425 U.S. at 91 (overnight consultation prohibited during trial); *Brooks*, 406 U.S. at 609–12 (lawyer required to put defendant on witness stand first or not at all); *Ferguson*, 365 U.S. at 596 (no assistance when defendant made his statement to trial jury); and *Powell*, 287 U.S. at 57–58 (inadequate time to prepare).

The majority even acknowledges that the dicta in *Morgan* and *McDowell* were wrong *as a matter of fact*. Yet to deny Schmidt the benefit of the presumption of prejudice when his lawyer was physically present but silenced, the majority offers the following astonishing excuse: "we do not think a state court unreasonably errs for understanding the Court's decisions in the same way that we have." Ante at 19. This remarkable observation is wrong in two basic ways. First, it patronizes the state courts, which did not make this error of thinking that mere physical presence was enough, let alone cite *Morgan*

or *McDowell*. Second, our erroneous dicta did not err in *understanding* the Supreme Court's decisions. They erred by *overlooking* those decisions. Oversights in our legal research could not somehow create ambiguity in the Court's case law.[4]

The majority correctly acknowledges that *Ferguson v. Georgia* offers strong support for Schmidt's claim for denial of counsel. Ante at 20. Recall that in *Ferguson*, state law prohibited the defense lawyer from calling the accused to the witness stand and questioning him in the ordinary fashion. Instead, the accused was required to make any statement on his own behalf on his own, in narrative fashion, without guidance from a lawyer's questioning. 365 U.S. at 571–72.

The majority offers several proposed distinctions to avoid applying *Ferguson* to the denial of counsel in this critical stage of the prosecution:

> *Ferguson* held only that a state law effectively
> banning counsel from eliciting his client's trial

---

[4] *McDowell* at least included a footnote recognizing that physical absence was not actually required to apply the presumption of prejudice, citing cases where counsel fell asleep during trial. 497 F.3d at 762 n.2, citing *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001) (en banc), *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996), and *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984). The results in *McDowell* and *Morgan* did not depend on their erroneous "physical presence" dicta. In *McDowell*, the issue was a tactical choice by defense counsel, not a court-imposed gag. We held that the state courts did not act unreasonably by applying *Strickland v. Washington* and its requirement that prejudice from supposedly ineffective assistance be shown rather than presumed. 497 F.3d at 763. And Morgan was never denied counsel. At least one defense lawyer was both physically present and able to represent him throughout his trial. 662 F.3d at 804.

> testimony was unconstitutional. It did not es-
> tablish that defendants have an absolute right to
> have their counsel elicit any important testi-
> mony, or else prejudice will be presumed.

Ante at 20–21. The majority also notes that *Ferguson* con-
cerned a defendant's statements about his innocence during a
jury trial, whereas Schmidt's situation concerned his response
to questions, in part guided by his written offer of proof, in
chambers regarding the admissibility of a defense. According
to the majority, unlike with Schmidt's situation, "*Ferguson*
worried about the 'tensions of a *trial*,' embarrassment before
'*public* assemblies,' the chance to establish a defendant's '*in-
nocence*,' and the risk that he could '*overlook*[ ] important' ex-
culpatory facts." Ante at 21, quoting *Ferguson*, 365 U.S. at 594–
96.

The majority assures us that these distinctions matter be-
cause "none of those worries" apply here. That's hard to ac-
cept at face value. In terms of tension, no matter how many
people were in the room, the stakes could not have been
higher for Schmidt: life in prison versus a chance at a term of
years he might survive. *Ferguson* spoke in terms of an accused
who is "unaccustomed to speak in public assemblies, or to put
together his thoughts in consecutive order any where." 365
U.S. at 595–96. And while Schmidt may or may not have over-
looked any exculpatory facts, he certainly flooded the judge
with lots of irrelevant and distracting detail in his rambling
narrative, which conflicted, at least in the judge's mind, with
the lawyer's summary offer of proof. See ante at 6.

More important, when considering the majority's pro-
posed distinctions, it's essential to remember that *Ferguson*
simply does not stand alone, in terms of precedent, logic, or

common sense. The suggestion that its logic could be limited to only one critical stage—trial testimony—runs counter to the entire sweep of the Supreme Court's critical-stage jurisprudence. Is the majority's theory that even if *Ferguson* established a rule for trials, a court may deny the accused the assistance of a lawyer in presenting his testimony in other critical pretrial proceedings? The majority's theory for treating this state court decision as reasonable depends on suggesting distinctions between *Ferguson* and this case that the Supreme Court's right-to-counsel cases reject: between trial and sentencing (see, e.g., *Mempa v. Rhay*, 389 U.S. 128 (1967)), and between trial and pretrial hearings (see all the pretrial critical-stage cases). The Supreme Court has made sufficiently clear that criminal courts may not pick and choose among critical stages, denying assistance of counsel for only some of them as long as they allow counsel for others.

The majority criticizes this analysis of the right-to-counsel cases as too general, connecting *Powell*, *Holloway*, *Brooks*, *Herring*, *Geders*, and *Ferguson*. Ante at 22–23. In the majority's view, drawing a general principle from such varied contexts simply cannot meet the burden of showing that habeas relief is required by Supreme Court precedent. After the 1996 amendment to § 2254(d)(1), that is often a good argument against habeas relief, but not here. The point here is that the Supreme Court itself has applied both the right to counsel and the presumption of prejudice in so many different contexts, regardless of distinctions the majority invokes here. The right to counsel is broad. So is the presumption of prejudice, though not as broad as the right to effective assistance of counsel. Habeas relief cannot reasonably be denied on the ba-

sis of distinctions the Supreme Court itself has rejected by extending both that right and the presumption of prejudice so broadly and in so many contexts.

*Ferguson* stated clearly what I would expect trial judges and lawyers to take for granted: only the most extraordinary client could provide a narrative as effective as an account of relevant facts set forth through a lawyer's organized direct examination. *Ferguson* is only the closest example of a series of Supreme Court cases, cited above, holding that an accused was denied counsel when the state silences the lawyer or otherwise prevents the lawyer from providing effective assistance to the accused in *any* critical stage.[5]

I noted earlier a potentially relevant line of cases, though one that neither the state courts nor the majority have invoked. It addresses defense lawyers who fall asleep or who are briefly absent from trial. The practical consequences of a silenced lawyer are akin to those of a sleeping lawyer. The

---

[5] The majority also seeks support from a most unlikely source: *Estelle v. Smith*, 451 U.S. 454 (1981). In that case, the Supreme Court held that a defendant was entitled to the assistance of his lawyer in deciding whether to submit to a psychiatric evaluation. *Id*. at 471. The Court did not hold that the accused had a right to have his lawyer present during the psychiatric examination itself. *Id*. at 470 n.14. The majority suggests: "Apply *Estelle*'s reasoning here: Schmidt could, and did, consult with his counsel before submitting to (and during) the *in camera* examination, and thus the right-to-counsel problem does not necessarily follow." Ante at 20.

The majority seems to be suggesting that a state court could reasonably extend a case addressing a private psychiatric examination to other critical stages of the prosecution, including an interrogation on the merits by the judge. That is an unreasonable stretch, and it's a symptom of the majority's over-correction in applying § 2254(d)(1), trying much too hard to find and support a theory to deny relief.

general rule is that a lawyer who is physically present but asleep is not acting as a lawyer for the accused. See, e.g., *United States v. Roy*, 855 F.3d 1133, 1161 (11th Cir. 2017) (en banc); *McDowell*, 497 F.3d at 762 n.2; *Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001) (en banc); *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996); *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984). The cases show, however, that courts have allowed for *de minimis* exceptions to the presumption of prejudice, applying the presumption if counsel slept through a "substantial portion" of the trial. *Roy*, 855 F.3d at 1161 (collecting cases); see also *Woods v. Donald*, 135 S. Ct. 1372, 1377–78 (2015) (reversing grant of habeas relief where one defense lawyer chose to miss ten minutes of testimony about other defendants and had told judge in advance that the testimony would not matter to his client's defense).

To determine what constitutes a "substantial portion," courts look at "the length of time counsel slept, the proportion of the trial missed, and the significance of the potion counsel slept through." *Roy*, 855 F.3d at 1162, quoting *United States v. Ragin*, 820 F.3d 609, 622 n.11 (4th Cir. 2016). Another consideration is "whether the specific part of the trial that counsel missed is known or can be determined." *Id*.

Those cases of dozing or briefly absent lawyers help illustrate how different the denial of counsel was in this case. There was nothing *de minimis* about this denial of counsel. The lawyer was silenced during the entire interrogation, and the importance of this interrogation cannot be overstated. It was the decisive presentation of evidence on the only disputed issue. Having been ordered by the judge not to participate in it, Schmidt's lawyer might as well have been asleep … or entirely absent.

The right to counsel at all critical stages of a prosecution is not narrow and fact-bound. It is critical to our criminal justice system, and the presumption of prejudice is essential to the Supreme Court jurisprudence enforcing that right. The majority has lost sight of the fact that the accused is entitled to the assistance of counsel during the entirety of a critical stage, not just part of it. Schmidt needed counsel's help in confronting the burden of production on a complex factual and legal defense. The court's silencing of his lawyer deprived him of counsel at the most critical stage of his case. When the state denies a defendant counsel at a critical stage, prejudice is presumed. E.g., *Bell v. Cone*, 535 U.S. 685, 695–96 (2002); *Cronic*, 466 U.S. at 658–59 & n.25. This presumption should apply here. We should reverse the denial of a writ of habeas corpus.

III. *Schmidt's Due Process Claim*

Schmidt also argues that the state trial court deprived him of his liberty without due process of law by denying him the right to present his defense in mitigation to the jury. The Supreme Court has long held that the accused in a criminal case has a due process right to present a defense, and that arbitrary or disproportionate limits on that right can violate the federal Constitution. See, e.g., *Holmes v. South Carolina*, 547 U.S. 319, 329–31 (2006); *Rock v. Arkansas*, 483 U.S. 44, 55–57 (1987) (state prohibited testimony from witnesses who had been hypnotized); *Crane v. Kentucky*, 476 U.S. 683, 689–91 (1986) (state prohibited challenge to voluntariness of confession); *Green v. Georgia*, 442 U.S. 95, 97 (1979) (at sentencing, state prohibited hearsay from witness who testified that co-defendant had fired fatal shot); *Chambers v. Mississippi*, 410 U.S. 284, 302–03 (1973) (state hearsay rules barred reliable exculpatory evidence); accord, e.g., *Kubsch v. Neal*, 838 F.3d 845, 860–62 (7th

Cir. 2016) (en banc) (same). This line of cases applies not only to questions of innocence and guilt, but also to grounds for mitigating punishment. Under this line of cases, state rules of law that are ordinarily reasonable may, as applied, deprive a particular defendant of liberty without due process.

To the extent Schmidt argues in this appeal that the state trial court's inquisitorial process—all questioning by the judge rather than counsel—violated his due process rights, that focus on the judicial questioning was not developed in the state courts or the district court. At every stage of the prosecution and appellate and habeas review, including this appeal, however, Schmidt has raised a broader due process challenge to the judge's pretrial decision that prevented him from presenting his "adequate provocation" defense to the trial jury. His briefing has cited the *Chambers/Holmes/Rock/Crane* line of Supreme Court due process cases and Wisconsin state court decisions citing and applying them, including *State v. St. George*, 2002 WI 50, ¶ 52, 252 Wis. 2d 499, 526–27, 643 N.W.2d 777, 788. His challenge in the state courts to the judge's pretrial decision was addressed primarily in terms of state law: whether the judge erred in finding that Schmidt had failed to produce "some evidence" of "adequate provocation." His argument included a clear assertion, however, that he was also seeking relief on a federal due process theory.

Accordingly, on the question whether he fairly presented his due process claim to the state courts and to the district court, Schmidt has considerably stronger arguments than the majority asserts. Since Schmidt's claim for denial of his right to counsel is so strong, however, I see no need to delve more deeply into his due process theory.

*Conclusion*

The violation of petitioner Schmidt's right to counsel during the most critical stage of his prosecution was evident from controlling Supreme Court precedent. The state courts' rejection of Schmidt's claim was unreasonable under 28 U.S.C. § 2254(d)(1). We should reverse the denial of a writ of habeas corpus and allow Schmidt a fair chance to show that he was guilty of second-degree murder rather than first degree murder.