In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-3086

KEITH C. HENYARD,

*Petitioner-Appellant,*

*v.*

CHERYL EPLETT, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-CV-839 — **Nancy Joseph**, *Magistrate Judge.*

ARGUED MARCH 29, 2024 — DECIDED APRIL 26, 2024

Before ROVNER, ST. EVE, and PRYOR, *Circuit Judges.*

ST. EVE, *Circuit Judge*. After the State of Wisconsin charged Keith Henyard with drug-related felony crimes, Henyard hired a new attorney to represent him. It just so happened that Henyard's new attorney had presided over his preliminary hearing in that same case. This potential conflict apparently went unnoted until almost a year after Henyard pleaded guilty, and he now seeks to have that plea vacated, arguing that his attorney's conflict rendered his representation

ineffective. Because the state court correctly stated and rea-
sonably applied the law, we affirm.

## I. Background

### A. State Prosecution

Facing eight state felony drug charges, Keith Henyard ap-
peared with counsel for a preliminary hearing before Ke-
nosha County Court Commissioner Frank Parise on Decem-
ber 28, 2016. At that hearing, Parise accepted Henyard's
waiver of a full hearing, found probable cause based on the
complaint, and bound Henyard's case over for trial.

A few months later, Henyard fired his attorney and hired
new counsel. In an unusual turn of events, his new attorney
was Frank Parise, the very same court commissioner who pre-
sided over his preliminary hearing. In May 2017, Parise ap-
peared with Henyard at a pretrial hearing, and the court set a
date for trial. At no point did anyone mention Parise's previ-
ous role at Henyard's preliminary hearing just five months
earlier.

Leading up to trial, Parise requested an adjournment due
to new charges Henyard faced, objected to a bond increase the
court imposed in light of those new charges, and moved to
dismiss charges when the government failed to complete
drug contraband testing in Henyard's case before the final
pretrial hearing. Although those attempts were unsuccessful,
Parise did secure a plea deal for Henyard. On the day Hen-
yard's trial was set to begin, he pleaded guilty to four of the
eight counts charged; the court dismissed the remaining four
counts but read them into the record for consideration at sen-
tencing. At no point during any of these proceedings did Hen-
yard bring up his attorney's potential conflict. Quite the

contrary—when pleading guilty, Henyard stated that he was satisfied with Parise's representation.

Despite the mitigation arguments Parise made at sentencing, including the relatively small amount of drugs involved and Henyard's remorse and difficult childhood, the court nevertheless sentenced him to 12 years' imprisonment followed by 5 years of extended supervision for one count, and 6 years of probation to follow for the other 3 counts. Even then, Henyard never raised any objection or concern about his attorney's conflict.

## B. Postconviction Proceedings

Henyard later petitioned the Kenosha County Circuit Court for postconviction relief, moving to withdraw his plea on the basis of ineffective assistance of counsel. He contended that because Parise personally participated in the matter by presiding over his December 2016 preliminary hearing in violation of Wisconsin Supreme Court Rule 20:1.12(a), Parise labored under an active conflict of interest.[1]

The circuit court held an evidentiary hearing at which Parise testified in February 2019. At that hearing, Parise explained that in December 2016, he had only been filling in periodically for full-time court commissioners. At no point did he recall presiding over Henyard's preliminary hearing, although he did not dispute that he had. He testified that he did

---

[1] Wisconsin Supreme Court Rule 20:1.12(a) prohibits a lawyer from "represent[ing] anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other 3rd-party neutral." This rule "is not subject to waiver by consent of the parties involved." Wis. S. Ct. R. 20:1.12(a) cmt.

not recognize Henyard when Henyard hired him, and while he conducted a conflict check, he mistakenly missed this one. Henyard did not appear to recognize him and never mentioned his role in the preliminary hearing. As to the substance of his representation, he told the court that Henyard hired him to secure a plea bargain, which he did. After Parise's testimony, Henyard's new counsel could not explain how the alleged conflict affected Parise's representation, arguing instead that the mere fact of Parise's role in the initial appearance created an actual conflict justifying withdrawal of the plea.

The court found that Henyard knew Parise presided over his preliminary hearing and nevertheless sought his representation. Having manufactured his own distress, he could not later object to the conflict. Additionally, because Henyard could not show an actual conflict or a serious potential conflict of interest, his claims that Parise's representation violated his constitutional rights could not stand.

In a split decision, the Wisconsin Court of Appeals also rejected Henyard's petition, explaining that Henyard "failed to demonstrate that Parise had an actual conflict of interest that adversely affected his performance and thus failed to show that Parise performed ineffectively." The court accepted the circuit court's finding that Parise made a "mistake" by not catching the conflict and that he had no recollection of presiding over Henyard's preliminary hearing. Relying on Wisconsin precedent, the court explained that for a conflict brought to the court's attention only in postconviction proceedings, Henyard must show that Parise "was actively representing a conflicting interest, so that the attorney's performance was adversely affected." *See State v. Love*, 594 N.W.2d 806 (Wis. 1999). Because Parise was not aware he had presided over

Henyard's preliminary hearing, and because Henyard could identify no negative effect on Parise's performance, Henyard failed to carry that burden.

After the Wisconsin Supreme Court denied Henyard's petition for review, he turned to the federal district court, seeking a writ of habeas corpus under 28 U.S.C. § 2254. The district court also denied his petition, finding that the United States Supreme Court's precedent required him to show a conflict that affected counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002). The Wisconsin Court of Appeals' decision, the district court concluded, complied with that precedent and reasonably applied the law to deny Henyard relief.

On June 30, 2023, we granted Henyard a certificate of appealability. He advances similar arguments here, contending that Parise's conflict of interest rendered his representation ineffective.

## II. Analysis

When considering a petition for a writ of habeas corpus, "[w]e review the district court's decision de novo, but our inquiry is an otherwise narrow one." *Schmidt v. Foster*, 911 F.3d 469, 476 (7th Cir. 2018) (en banc). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant habeas relief from a state-court decision "only when that decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 476–77 (quoting 28 U.S.C. §§ 2254(d)(1), (2)). As § 2254(d)(1)

indicates, only holdings from the Supreme Court can justify relief. *Id.* at 477 (citing *Harrington v. Richter*, 562 U.S. 86, 100 (2011)).

Because Henyard challenges only the state court's articulation of the law and not any factual findings, our focus is on § 2254(d)(1)—whether the decision was contrary to or an unreasonable application of clearly established law.

Henyard faces an uphill battle. *See Hodkiewicz v. Buesgen*, 998 F.3d 321, 326 (7th Cir. 2021). We must defer to state court decisions—the decision from the last state court to rule on the merits of the petitioner's claim, *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014)—if "the specific reasons given by the state court … are reasonable." *Hodkiewicz*, 998 F.3d at 326. "A state court unreasonably applies federal law if it correctly identifies the governing Supreme Court precedent but unreasonably applies its holding to the facts of the case." *Cook v. Foster*, 948 F.3d 896, 901 (7th Cir. 2020).

## A. Established Law

To determine whether the Wisconsin Court of Appeals acted "contrary to … clearly established Federal law," § 2254(d)(1), we start by determining what that clearly established law is.

The Sixth Amendment guarantees representation for criminal defendants. That guarantee, the Supreme Court has explained, entails the requirement that assistance be "effective" to ensure a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Mickens*, 535 U.S. at 166.

Typically, to succeed on a claim that counsel's assistance was so defective as to violate the Sixth Amendment, a defendant must demonstrate two things. "First, the defendant must

show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. And "[s]econd, the defendant must show that the deficient performance prejudiced the defense." *Id.*

Despite the second requirement—that a defendant show prejudice—*Strickland* preserved previously carved-out exceptions to that requirement. *Id.* at 692. This includes an exception when counsel represents co-defendants: "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). In other words, to gain the presumption of prejudice as to a conflict stemming from multiple representation, the defendant must still demonstrate two things: 1) an active representation of conflicting interests, and 2) an adverse effect on performance due to that conflict. *Sullivan*, 446 U.S. at 348–50.[2]

*Mickens* clarified that when a defendant complains of ineffective assistance of counsel due to a potential conflict that was not raised in front of the trial court, he must "show[] that his counsel *actively represented* conflicting interests," with a significant effect on performance. 535 U.S. at 175 (quoting *Sullivan*, 446 U.S. at 350); *see also id.* at 172–73 ("As discussed, the rule applied when the trial judge is not aware of the conflict (and thus not obligated to inquire) is that prejudice will be

---

[2] Henyard did not argue that Parise's alleged conflict should be analyzed as a structural error, and we note that the probable cause determination occurred in a proceeding separate from the trial and was not subject to attack in the trial. In this case, we are not presented with the allegation that a person acted in both an adjudicative and representative capacity in the same proceeding or regarding the same issue.

presumed only if the conflict has significantly affected counsel's performance."). It is not enough to simply identify a potential conflict. *Id.*

Because "[n]ot all attorney conflicts present comparable difficulties" to multiple representation, however, *Sullivan*'s multiple-representation rule does not necessarily "clearly establish, or indeed even support, such an expansive application" as a presumption of prejudice for all conflicts of interest. *Id.* Indeed, we have noted that *Mickens* casts doubt on whether *Sullivan* (with its relaxed requirements for a showing of prejudice) applies to successive representation—and, by extension, other potential conflicts. *See Holleman v. Cotton*, 301 F.3d 737, 743 (7th Cir. 2002).

In short, the Supreme Court has clearly established that where a conflict arises from multiple representation, a defendant must show that his attorney actively represented conflicting interests in a way that had an adverse effect on the attorney's performance to establish a claim for ineffective assistance of counsel. If the defendant can show an adverse effect, prejudice is presumed.

What the Court has not clearly established is whether this rule presuming prejudice extends to conflicts beyond multiple representation. Nor has the Court ever said that a defendant need not show an adverse effect on performance to prevail on a conflicts theory of ineffective assistance.

Nothing in that body of law conflicts with the rule the Wisconsin Court of Appeals applied when considering Henyard's petition for postconviction relief: that Henyard must show Parise labored under an active conflict of interest that adversely affected his representation. Though citing Wisconsin

Supreme Court precedent, the Court of Appeals' rule is consistent with *Strickland* and *Sullivan*: "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Sullivan*, 446 U.S. at 350). The Supreme Court has never held that, when a defendant objects to an alleged conflict of interest after the conclusion of proceedings, both prejudice *and* adverse effect can be presumed. Because the state court decision correctly stated the standard laid out in *Strickland* and *Sullivan*, no fair-minded jurist could find that it conflicts with the law as articulated by the Supreme Court. *See Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam).

**B. Application of Law**

Nor did the Wisconsin Court of Appeals err by any "unreasonable application" of that rule to the facts in Henyard's case. *See* § 2254(d)(1). The court did not require Henyard to show prejudice, only faulting him for failing to show both that Parise actively labored under a conflict of interest and that the conflict adversely affected his performance. *See Strickland*, 466 U.S. at 692.[3]

---

[3] After *Mickens*, it is particularly unclear whether failing to presume prejudice in Henyard's case would be contrary to clearly established law as determined by the Supreme Court. There, the Court noted that *Sullivan* did not establish, and it would not now extend, a rule that a presumption of prejudice exists for potential conflicts aside from multiple representation. *Mickens*, 535 U.S. at 175. But because the Wisconsin Court of Appeals applied the rule more friendly to Henyard, we need not decide whether prejudice must be presumed in his case.

Henyard argues that an ethical violation alone should be sufficient to establish an actual conflict. But Supreme Court precedent does not support this position. *See Mickens*, 535 U.S. at 176 ("The purpose of our *Holloway* and *Sullivan* exceptions from the ordinary requirements of *Strickland*, however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel.").

Even if Henyard could show an active conflict, he cannot identify any adverse effect on Parise's representation. He does not argue, for example, that he pleaded guilty because of Parise's advice, when he would have otherwise gone to trial. At the postconviction hearing before the circuit court, Henyard's attorney admitted to being unable to identify any adverse effect. On appeal, Henyard suggests that Parise might have worked harder to obtain a more favorable plea deal. But the Wisconsin Court of Appeals found that Parise was not aware of the conflict, a reasonable factual finding that Henyard does not challenge. Alternatively, Henyard suggests that Parise's conflict has an adverse effect on the legal system by injecting mistrust. But *Strickland* is clear: Henyard must show an adverse effect on Parise's specific performance as Henyard's attorney. *See* 466 U.S. at 690–91. Any general adverse effect will not do.

Without specific evidence of an adverse effect on performance, which Henyard does not supply, it is reasonable to conclude that because Parise did not know he presided over Henyard's preliminary hearing, his performance was not adversely affected.

### III. Conclusion

Because the state court's denial of Henyard's petition for postconviction relief was neither contrary to nor an unreasonable application of Supreme Court precedent, the judgment of the district court is

AFFIRMED.